**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 case |
| NEWAGE, INC., *et al.*,[1] | Case No. 22-10819 (LSS) |
| Debtors. | (Jointly Administered) |

**PURCHASER'S MOTION TO ENFORCE SALE ORDER AND**
**CONTINUED PERFORMANCE OF ASSUMED CONTRACTS**

DIP Financing, LLC and EYWA LLC ("EYWA") (collectively, "Purchaser"), along with entities conveyed as part of the Purchaser's purchase and sale of assets and operating entities (collectively, the "Operating Parties"), hereby move this Court for an Order enforcing this Court's Sale Order (defined below) in order to ensure continued and uninterrupted performance by contract-counterparties in favor of the Operating Parties and to preclude the discontinuation of services that would interfere with the implementation of the Sale Order, including the use and enjoyment of the assets purchased. In support of this Motion, the Purchaser and Operating Parties respectfully state as follows:

**Background**

1. On August 30, 2022 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.

2. On September 30, 2022, this Court entered its *Final Order Authorizing the Debtors to Obtain Postpetition Financing, et al* (Doc. 160) ("DIP Financing Order"), authorizing and

---

[1] The last four (4) digits of each of the Debtors' federal tax identification number are NewAge, Inc., (2263), Ariix LLC (9011), Morinda Holdings, Inc. (9756), and Morinda, Inc. (9188) (collectively, the "Debtors"). The Debtors' address is 7158 S. FLSmidth Dr., Suite 250, Midvale, Utah 84047.

approving the Senior Secured Debtor-in-Possession Term Loan Agreement (Doc. 160-1) (the "DIP Loan Agreement").

3. On or about October 17, 2022, this Court entered its *Order (I) Authorizing the Sale of Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Final Asset Purchase Agreement; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (Doc. 224) (the "Sale Order"), authorizing the Debtors to sell substantially all of their assets to DIP Financing, LLC, or its assigns in accordance with the Sale Order and the Final Purchase Agreement (as defined in the Sale Order) attached to the Sale Order as Composite Exhibit A, and incorporated herein by reference.

4. Pursuant to the approved Asset Purchase Agreement ("APA"), the Purchaser purchased certain "Acquired Assets," which included substantially all of the Debtors' assets, subsidiary operating entities (including the Operating Parties), and other contract rights, limited only by specific exclusions in the APA, not applicable to the subject of the relief requested herein. (Doc. 224-1, at 1-10).

5. Among other things, the Acquired Assets included all rights under contracts to be assumed by the Purchaser and all of the Seller Parties' bank accounts. (Doc. 224-1, at 3-4).

6. The Sale Order provided that the transfer of assets pursuant to the Purchase Agreement is a "legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Assets." (Doc. 224, ¶ I).

7. The Sale Order further provided:

Non-Debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from

> accepting performance by, or rendering performance to, the Purchaser, for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline to file objections has expired and to the extent any such party timely filed an objection, all such objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any such party did not timely file an objection, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract and (ii) the corresponding proposed Cure Amount, if any.

(Doc. 224, ¶ G). The assumption and assignment of the Debtor's contracts with its service providers and banks was, as set forth in the Sale Order, "integral" to the sale. (Doc. 224, ¶ U).

8. Accordingly, this Court found:

> Any objections to the assumption and assignment of any of the Assumed Contracts by the Purchaser, in accordance with the Final Purchase Agreement are hereby overruled or moot. To the extent that any counterparty failed to timely object to the proposed Cure Amounts, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of its respective Assumed Contract(s) to the Purchaser in accordance with the Final Purchase Agreement.

(Doc. 224, ¶ V).

9. The Sale Order further provides:

> Upon the Debtors' assignment of the Assumed Contracts to the Purchaser under the provisions of this Sale Order … no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Purchaser under such Assumed Contract or (b) otherwise take action against the Purchaser as a result of the Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assumed Contract. Each non-Debtor counterparty to an Assumed Contract, unless otherwise ordered by the Court, hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Purchaser or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, or against the Purchaser, any counterclaim, defense, setoff, recoupment, or any other Claim asserted or able to be asserted against the Debtors; …

(Doc. 224, ¶ 21).

10. This Court further reserved "the broadest lawful jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2) to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Final Purchase Agreement, all

3

amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Purchaser in accordance with the Final Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale…"  (Doc. 224, ¶ 38).

11.     DIP Financing, LLC designated EYWA to take title to all rights and obligations under the Purchase Agreement. The sale of substantially all of the Debtors' assets, as authorized and directed pursuant to the Sale Order, closed on October 17, 2022 ("Closing").

## Relief Requested

12.     In the ordinary course of business, the Debtors and their operating subsidiaries worldwide were parties to a number of financial service agreements and banking relationships, all of which were in good standing as of the Petition Date, including but not limited to agreements with Bank of America; Chase Paymentech Europe Limited (a subsidiary of JP Morgan Chase Bank, NA); HSBC Bank USA, National Association; and Digital River World Payments, Inc.

13.     Through these service providers, including financial institutions and intermediaries, the Debtors processed, and now the Purchaser and Operating Parties process, multi-millions of dollars in sales and employee/contractor compensation in Europe, Asia, and Africa, affecting greater than 15,000 employee/contractors.

14.     All of the above described service agreements and contracts were either sold to the Purchaser or were (or will be) assumed by the Debtors and assigned to the Purchaser, pursuant to the Sale Order, the APA or modifications thereto, so that the company's worldwide operations could move forward without interruption, as contemplated by all parties, in the same manner as existed in the Debtors prepetition.

15. Any interference with or shutdown of these accounts and processes would pose a significant financial impact on the operations of the businesses acquired by and transferred to the Purchaser via the Sale Order, and would consequently interfere with the implementation of the Sale Order and its concomitant benefits acquired benefits.

16. Communications with the contract counterparties, concerning certain demands regarding cessation of performance under the assumed or purchased contracts, are ongoing and, while the Purchaser appreciates and welcomes agreements reached regarding ongoing performance, the Purchaser is concerned with any potential or actual cessation of performance of such assumed or purchased agreements, using these bankruptcy cases or the sale of assets as a basis to cancel or modify the terms of any contract affected by the Sale Order.

17. In order to implement and enforce the terms and provisions of this Court's Sale Order, the Purchaser requests an order enforcing this Court's Sale Order and preventing any contract-counterparty from altering, refusing or discontinuing services to, or discriminating against, the Purchaser on the basis of these chapter 11 cases or the acquisition of contract rights via the Sale Order and the Bankruptcy Code.

## **NOTICE**

18. Notice of this Motion shall be provided to: Bank of America; Chase Paymentech Europe Limited (a subsidiary of JP Morgan Chase Bank, NA); HSBC Bank USA, National Association; and Digital River World Payments, Inc.

WHEREFORE, the Purchaser respectfully requests this Court enter an order providing for the relief requested herein as well as granting such other and further relief as this Court deems necessary and proper.

Dated: February 24, 2023

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ Steven W. Golden*
Steven W. Golden (DE Bar No. 6807)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Tel: (302) 652-4100
Facsimile: (302) 652-4400
sgolden@pszjlaw.com

**SHUMAKER, LOOP & KENDRICK, LLP**

By: */s/ Steven M. Berman, Esq.*
Steven M. Berman, Esq.
Fla. Bar No.: 856290
sberman@shumaker.com
bgasaway@shumaker.com
101 E. Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone: (813) 229-7600

*Counsel for the Movants*