# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEWAGE, INC. *et al.*,[1] | Case No. 22-10819 (LSS) |
| Debtors. | (Jointly Administered) |
| | Related to Dkt Nos. 513, 532 |
| | Objection Deadline:<br>BOA's extended to March 17, 2023, 4:00 p.m.<br>Hearing Date: March 22, 2023, 10:00 a.m. |

### BANK OF AMERICA, N.A.'S RESPONSE IN OPPOSITION TO PURCHASER'S MOTION TO ENFORCE SALE ORDER AND CONTINUED PERFORMANCE OF ASSUMED CONTRACTS

Bank of America, N.A., ("BOA"), by and through its undersigned counsel, files this response[2] in opposition to the *Purchaser's Motion To Enforce Sale Order And Continued Performance Of Assumed Contracts* filed on February 24, 2023 [Docket No. 513] ("Motion") by DIP Financing, LLC ("DIP") and EYWA LLC ("Purchaser" and, collectively with DIP, "Movants").

In the Motion, for which BOA was not given proper notice, Movants ask that this Court enter an order "enforcing" the purchase by Movants of certain assets of the Debtors' estates. However, the "enforcement" sought by Movants is an ineffective and impermissible injunction against BOA exercising its contractual rights under contracts that were not assumed and assigned to the Movants. BOA therefore objects and asks that the Court deny the Motion in its entirety, and grant BOA such other and further relief as may be warranted under the circumstances.

## BACKGROUND

---

[1] The last four (4) digits of each of the Debtors' federal tax identification number are NewAge, Inc., (2263), Ariix LLC (9011), Morinda Holdings, Inc. (9756), and Morinda, Inc. (9188). The Debtors' address is 7158 S. FLSmidth Dr., Suite 250, Midvale, Utah 84047.
[2] Movants' counsel granted BOA an extension to file this response by no later than March 17, 2023 by 4:00 pm EST.

1.  Debtor NewAge, Inc. ("NewAge"), Ariix LLC ("Ariix"), Morinda Holdings Inc. ("Morinda Holdings"), and Morinda Inc. d/b/a Noni by NewAge ("Noni" and collectively with NewAge, Arixx, and Morinda Holdings, the "Debtors") commenced the above-captioned chapter 11 cases (these "Chapter 11 Cases") on August 30, 2022 (the "Petition Date"), by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.  Prior to the Petition Date, the Debtors and numerous affiliates of the Debtors maintained bank accounts with BOA (the "BOA Accounts").

3.  The BOA Accounts are governed by a series of deposit account agreements with terms and conditions (collectively, the "BOA Account Agreements"). An example of the same, which may vary by country or region, are attached as Exhibits B and C. The BOA Account Agreements authorize either party to terminate accounts or services, with or without notice depending on the circumstances. *See, e.g.,* Ex. B, p. 2 ("Closing an account or suspending and terminating a service"); Ex. C, p. 3, para. 9 ("Suspension and Termination"). The BOA Account Agreements contain dispute resolution provisions. *See, e.g.*, Ex. B, p. 6 ("Resolving disputes or controversies"), Ex. C, p. 2, para. 5 ("Resolution of Disputes; Service of Process").

4.  On October 17, 2022, this Court entered an order [Docket No. 224] (the "Sale Order") authorizing the sale of many of the Debtors' assets to Purchaser and approving a certain *Final Purchase Agreement* (including its amendments and as attached to the Sale Order as Composite Exhibit A, the "APA"). Among the assets acquired by Purchaser were "all of [Debtors'] bank accounts." *See* APA, § 1.1(r).

5.  The Sale Order also provided for the assumption and assignment to Purchaser of certain contracts listed on Exhibit B to the Sale Order. None of the BOA Account Agreements is listed among the Assumed Contracts.

6. Upon information and belief, the sale contemplated by the APA closed on October 17, 2022 (the "Sale Closing Date").

7. Prior to the Petition Date, BOA determined, in its discretion, to terminate the BOA Accounts. As of the Petition Date, BOA had not issued termination notices to all of the account holders. As a result of the Debtors' bankruptcy filings, BOA did not issue termination notices as to the Debtors' accounts; but termination notices had been issued to the Debtors' affiliates.

8. In addition, BOA, like all federally regulated financial institutions, is required to compile "know your customer" ("KYC") information. If BOA requests, and does not receive, KYC information from a customer, BOA may, in its discretion, terminate the non-compliant customer's account in order for BOA to remain compliant with its KYC policies and procedures adopted in accordance with applicable laws and regulations.

9. After the Sale Closing Date, BOA requested KYC information from the Purchaser as to the acquired accounts, and to several account holders who are affiliates of the Debtors (but, ostensibly, under Purchaser's control). As a result of non-compliance with BOA's KYC requests, BOA issued notices of termination.

10. Several of the BOA Accounts have already been closed. Although under no obligation to do so, BOA has extended the noticed closing date for several of the BOA Accounts as an accommodation.

11. Attached hereto as Exhibit A is a list of the BOA Accounts, the closure date (if closed) or scheduled closure date (if still open), and for those accounts that have not been closed, the date of closure notice.

**OBJECTIONS**

A. **The BOA Account Agreements Are Not "Assumed Contracts" Under The Sale**

**Order.**

12. The Motion is misleading, suggesting that the BOA Account Agreements are "Assumed Contracts." They are not, and therefore there is nothing for this court to "enforce."

13. The opening paragraph of the Sale Order specifically authorizes "the assumption and assignment of the Assumed Contracts listed on **Exhibit B** hereto to the Purchaser." The BOA Account Agreements are not listed on Exhibit B of the Sale Order. Therefore, the BOA Account Agreements are not within the Sale Order definition of "Assumed Contracts."

14. Despite this clear omission, Paragraph 5 of the Motion improperly implies that the BOA Account Agreements (as with all of the financial institution agreements referred to in the Motion) constitute "Acquired Assets," defined in the Sale Order as "all rights under contracts to be assumed by the Purchaser . . . ." Paragraph 7 of the Motion quotes the Sale Order language pertaining to "Assumed Contracts," and then falsely states that the Sale Order deems the "assumption and assignment of the Debtor's contracts with its service providers **and banks** . . . 'integral' to the sale." (emphasis added). Paragraphs 8 and 9 of the Motion discuss the Sale Order's findings related to "Assumed Contracts," again implying that the BOA Account Agreements fall within that definition.

15. Yet, even though the BOA Account Agreements have never been assumed and assigned to the Purchaser, the Motion dishonestly asks this Court to "prevent any contract-counterparty from altering, refusing or discontinuing services to, or discriminating against, the Purchaser on the basis of these chapter 11 cases **or the acquisition of contract rights via the Sale Order or the Bankruptcy Code.**" Motion, para. 17 (emphasis added).

16. Simply put, the Movants do not have any right to seek "enforcement" by prohibiting BOA from (i) exercising its rights under the BOA Account Agreements that were never assigned

4

to the Purchaser and (ii) ensuring BOA's own compliance with its KYC policies and procedures adopted in accordance with applicable laws and regulations.

**B.    Accounts Held By Debtor Affiliates Are Not Subject To This Court's Jurisdiction.**

17.    To the extent the Purchaser's acquired assets include the right to control BOA Accounts held by an affiliate of one of the Debtors, this Court lacks authority to enjoin BOA from performing pursuant to the terms of its agreement with non-debtor entities post-confirmation.

18.    The jurisdiction of a bankruptcy court is limited and is derived from 28 U.S.C. §§ 1334 and 157. Federal bankruptcy jurisdiction extends to four types of matters: (1) cases under title 11 (the "Bankruptcy Code"), (2) proceedings arising under the Bankruptcy Code, (3) proceedings arising in a case under the Bankruptcy Code, and (4) proceedings related to a case under the Bankruptcy Code. 28 U.S.C. §§ 157, 1334. *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006); *In re Combustion Eng'g Inc.*, 391 F.3d 190, 225 (3d Cir. 2004).

19.    The Motion is not a case under the Bankruptcy Code – it is not the petition itself. *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 264 (3d Cir. 1991).  The Motion is not a case "arising under" the Bankruptcy Code – it does not seek to enforce rights derived from the Bankruptcy Code.  *See, e.g., Michigan Emp'r Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132 , 1141 n.14 (6th Cir. 1991).  The Motion is not a case "arising in a case under" the Bankruptcy Code – it is not a claim that could only arise in the bankruptcy context.  *See, e.g., Seagate Tech. (US) Holdings, Inc. v. Global Kato HG, LLC (In re Solyndra, LLC)*, No. 11-12799 (MFW), 2015 Bankr. LEXIS 3515, 2015 WL 6125246, at *3 (Bankr. D. Del. Oct. 16, 2015).  The only possibility is that it is a case "related to" a case under Title 11.  *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999) ("the broader universe of all

proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case.").

20. Pre-confirmation "related to" jurisdiction extends to matters that "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

21. The Movants have failed to explain, or offer any evidence, how protection of *their* assets constitutes a protection of the *debtor's* estate. Rather, this is nothing more than a claim by non-debtors (Movants) against other non-debtors (BOA). On this record, the Motion must be denied.

    **C.**    **If Assumed, Requested Relief Upsets Contractual Venue And Forum Provisions.**

22. A bankruptcy court order authorizing assumption and assignment of a contract does not displace the venue and forum selection provisions in the assumed and assigned contract. *See, e.g.*, *In re Fleming Cos., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007) ("Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder.") Assuming, *arguendo*, that the BOA Account Agreements were assumed and assigned to the Purchaser, this Court would not have appropriate jurisdiction to enforce the parties' contractual rights thereunder – the BOA Account Agreements contain enforceable dispute resolution provisions. *See* 9 U.S.C. § 2 (Federal Arbitration Act).

    **D.**    **Requested Relief Is Moot As To BOA.**

23. Movants specifically ask this Court to enjoin "contract-counterparties" from discontinuing services or discriminating against the Purchaser "on the basis of these chapter 11 cases or the acquisition of contract rights via the Sale Order and the Bankruptcy Code." Motion, para. 17. To the extent (i) the Sale Order or Bankruptcy Code apply to the BOA Account

Agreements; and (ii) this Court were to exercise authority and jurisdiction over BOA, the order would not apply to BOA because BOA's exercise of its right to terminate the accounts and services has nothing to do with the chapter 11 cases or Purchaser's acquisition.

24. Prior to the Petition Date, BOA had determined it would terminate the accounts <u>for reasons unrelated to the chapter 11 cases or the Purchaser's asset acquisition</u>. Notice was properly given to the non-debtor affiliates, but was withheld as to the accounts held by the Debtors. Several of the BOA Accounts have already closed. After the Sale Closing Date, no automatic stay protected the Debtor's accounts – which were no longer property of the bankruptcy estate. Further, after the Purchaser failed to comply with BOA's KYC requirements, BOA provided notice of account termination.

25. The termination of accounts, and notices of termination issued by BOA, were not based on the chapter 11 cases or based upon the Purchaser's acquisition of assets. Rather, termination was based on a prepetition decision by BOA, and the Purchaser's failure to comply with BOA's KYC requirements pursuant to BOA's KYC policies and procedures adopted in accordance with applicable laws and regulations. The requested relief, therefore, will have no bearing on BOA's termination, or pending termination, of the BOA Accounts.

      E.     **<u>Movants' Request For Injunctive Relief Fails.</u>**

26. Movants' request for an order is a disguised and inappropriate application for injunctive relief, seeking to enjoin BOA (and others) from taking lawful action to comply with applicable laws and regulations and to protect its interests in property.

27. The Motion is deficient in this regard, as it fails to provide any statutory or other legal basis for enjoining a non-debtor (such as BOA) from taking appropriate action as to its relationship with another non-debtor (the Purchaser, or the affiliates of parent entities acquired by

the Purchaser).  A movant seeking a preliminary injunction carries the burden of persuasion by a clear showing.  *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). Injunctive relief requires a reasonable probability of success on the merits, irreparable injury to the movant absent injunctive relief, absence of relative harm to the non-moving party, and that such relief is in the public interest.  *McTernan v. City of York*, 577 F.3d 521, 527 (3d Cir. 2009).  Absent any legal authority in support of the request for relief, and without demonstrating how any of these elements could be satisfied, the Motion must be denied.

    **F.**    **Reservation of Rights.**

28.    To the extent Movants attempt to cure any of these fatal defects in their reply, BOA expressly reserves its right to respond thereto.

## CONCLUSION

For the reasons stated herein, BOA asks that this Court deny the Motion, and grant BOA such other and further relief as the Court may deem just and proper under the circumstances.

[*Signature Page To Follow*]

Dated: March 17, 2023

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Geoffrey G. Grivner
Geoffrey G. Grivner (4711)
500 Delaware Avenue, Suite 720
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295
geoffrey.grivner@bipc.com

*Local Counsel to Bank of America, N.A.*

**BRYAN CAVE LEIGHTON PAISNER, LLP**

Jarret P. Hitchings, Esq. (DE 5564)
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, North Carolina 28202
jarret.hitchings@bclplaw.com
(704) 749-8965

-and-

Kyle S. Hirsch, Esq. (*pro hac vice* pending)
Two North Central Avenue, Suite 2100
Phoenix, AZ  85004-4406
kyle.hirsch@bclplaw.com
(602) 364-7170

*Counsel to Bank of America, N.A.*