IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEWAGE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10819 (LSS)<br><br>(Jointly Administered)<br><br>**Re Docket 610** |

### RESPONSE OF WICP MT TECH 4, LLC IN OPPOSITION TO PURCHASER'S POST-CLOSING MOTION TO MODIFY THE ASSET PURCHASE AGREEMENT

WICP MT TECH 4, LLC ("**WICP**"), by and through counsel, respectfully submits this Response ("**Response**") in Opposition to DIP Financing, LLC's and EYWA, LLC's (collectively, the "**Purchaser**") "*Motion to Recognize Modification of Debtors' Schedule of Contracts and Unexpired Leases Subject to Assumption and Assignment*" [Docket 610](the "**Motion**").

### PRELIMINARY STATEMENT

The Purchaser entered into a Final Asset Purchase Agreement with Debtors (the "**Final Purchase Agreement**"), with court approval, that provided that the close of due diligence for the leases to be assumed and assigned was, at the latest, "1 business day prior to the final hearing to approve the Sale Motion." [*See* Final Purchase Agreement, Docket 224-1, at Section 1.5(b).] Pursuant to the Final Purchase Agreement, Purchaser began performing its obligations under the lease with WICP, including by paying rent and starting demolition in its performance of the build-out contemplated by the lease.

---

[1] The last four (4) digits of each of the Debtors' federal tax identification number are NewAge, Inc., (2263), Ariix LLC (9011), Morinda Holdings, Inc. (9756), and Morinda, Inc. (9188) (collectively, the "**Debtors**"). The Debtors' address is 7158 S. FLSmidth Dr., Suite 250, Midvale, Utah 84047.

Now, over six months after the close of due diligence <u>and</u> the closing of the transactions reflected in the Final Purchase Agreement <u>and</u> almost a month and a half after the Court confirmed the Debtors' Plan, the Purchaser asks the Court to "recognize" a modification to the contracts and unexpired leases which Purchaser has already acquired. At bottom, it appears that the Purchaser has buyer's remorse and—instead of taking appropriate action under the lease or in a jurisdictionally sufficient state court—it asks this Court to bend time and undo a decision the Purchaser already made several months ago. That is plainly beyond this Court's power. The Motion is procedurally improper, jurisdictionally deficient, and misconstrues the impact on the bankruptcy estate by failing to grapple with the Sale Order's own terms. Based on that, the Motion should simply be denied.

To the extent that the Motion is nevertheless granted, WICP requests that the Court recognize that while it was submitted without opposition by the Debtors, the Motion represents a rejection of the WICP lease by the Debtors <u>after</u> Debtors previously assumed the lease in October 2022. By law, this entitles WICP to an administrative claim under 11 U.S.C. § 503(b)(7). Contrary to Debtors' position in their *Limited Response to Purchaser's Motion to Recognize Modification of Debtors' Schedule of Contracts and Unexpired Leases Subject to Assumption and Assignment* ("**Debtors' Response**"), the Debtors already assumed their lease with WICP in October. [Docket 635.] If Debtors now consent to removing the lease from assignment to Purchaser and seek to reject the lease, WICP is entitled to an administrative claim against the estate.

## RELEVANT FACTS

1. The Debtors initiated bankruptcy petitions on August 30, 2022. [*See* the "**Plan**," Docket No. 527-1, at Section 2.1.3.][2]

2. The Debtors sought and received approval to prepare to sell substantially all of the Debtors' assets through a bidding process, with Purchaser acting as a stalking horse bidder. [*Id.* at Section 2.1.8.]

3. The purchase price offered by the Purchaser included the assumption of certain liabilities, as set forth in the Final Purchase Agreement. [*See id.; see also Order (I) Authorizing the Sale of Assets of the Debtors Free and Clear of all Liens, Claims, Encumbrances, and Interests; (II) Approving the Final Asset Purchase Agreement; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "**Sale Order**"), Docket No. 224, at 13–14.]

4. The Final Purchase Agreement provides that all unexpired leases and executory contracts listed in Schedule 1.1(a) would be "Assigned Contracts," to be acquired by the Purchaser subject to a pre-closing due diligence period. [Docket 224-1 at Section 1.1(a).]

5. The Final Purchase Agreement provided for a pre-closing due diligence period, wherein the Purchaser was permitted to remove a contract from the Assigned Contract schedule from execution of the purchase agreement "up to one (1) Business Day prior to the final hearing to approve the Sale Motion." [*Id.* at Section 1.5(b); Section 1.1]

---

[2] This Response cites to the *Third Amended Proposed Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (the "**Plan**"), where appropriate for the procedural history of the proceedings, which is set forth in § 2.1 thereof.

6.      The initial drafts of the purchase agreement, as well as the Final Purchase Agreement itself, listed the lease for commercial space in Lindon, Utah from WICP (the "**Lease**") in Schedule 1.1(a). [Docket 224-1 at 80.]

7.      The initial drafts of the purchase agreement were entered by the Purchaser on or about August 30, 2022, and were negotiated before the Debtors even initiated their Chapter 11 proceedings. [Docket 13, at 4–5 (discussing prepetition stalking horse arrangements).]

8.      The final hearing to approve the Sale Motion was held on October 11, 2022, at which time all interested parties, including WICP, had the opportunity to be heard with respect to the Final Purchase Agreement, including their inclusion or exclusion from Schedule 1.1(a). [Sale Order, Docket 224, at 2].

9.      The proposed order filed October 14, 2022 to authorize the Final Purchase Agreement listed the contracts to be assumed and assigned as Exhibit B to the proposed order. [*See Certification of Counsel Requesting Entry of Order,* Docket 217-1, at 143.] That exhibit included the Lease. [*Id.*]

10.     In fact, several creditors did raise objections to the Sale Order, leading to amendments to the Final Purchase Agreement excluding several contracts, as were listed in Debtor's Second Certification of Counsel. [*See Second Certification of Counsel Requesting Entry of Order,* Docket 223, at 4.] However, those modifications did not affect the WICP Lease, which remained in Exhibit B of the Sale Order and Schedule 1.1(a) of the Final Purchase Agreement. [*See* Sale Order, Exhibit A, Docket 224-1, at 80; Sale Order, Exhibit B, Docket 224-2, at 3.]

11.     As counterparty to a lease which the proposed sale order would have the Debtors assume and assign, WICP did not object to the Sale Order.

12.     The Court's Sale Order approved the Final Purchase Agreement. [Docket 224].

13. The Sale Order directed that "the Assumed Contracts *shall* be transferred and assigned to, and following the Closing Date remain in full force and effect for the benefit of, the Purchaser in accordance with the Final Purchase Agreement" and further ordered that "upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be *fully and irrevocably vested* in all right, title, and interest in each Assumed Contract." [Docket 224, at 20 (emphasis added).]

14. As Purchaser and Debtors concede, the Final Purchase Agreement closed on October 17, 2022 "as authorized and directed pursuant to the Sale Order." [Motion, Docket 610, at 2; Response, Docket 635, at 4; *see also* Plan, Docket 527-1, at Section 2.1.8.]

15. This is further evidenced by the Second Amendment to the Asset Purchase Agreement (the "**Second Amendment**"), which called for Purchaser to indemnify Debtors from any damages caused by "the rejection of any executory contracts and unexpired leases that were *previously assumed* and assigned to Buyer and/or EYWA." [Docket 611-1, at Section IV.1.]

16. By its terms, the Final Purchase Agreement's closing triggered "the purchase and sale of the Acquired Assets" by Purchaser. [Final Purchase Agreement, Docket 224-1, at 12.] Acquired Assets is defined as including all contracts "listed in Schedule 1.1(a)," which are to be assumed and assigned by the Debtor. [*Id.* at 7–8.]

17. Subsequent to the approval of the sale under the Final Purchase Agreement, the Debtors proposed and solicited and the Court confirmed their Chapter 11 Plan of Liquidation. [*See* Confirmation Order, Docket 527]. Relevant here, the Plan provides that "[a]ll executory contracts and unexpired leases to which the Debtors are a party are hereby rejected as of the Effective Date *except for* an executory contract or unexpired lease that (i) previously has been assumed pursuant

5

to [a] Final Order[3] of the Bankruptcy Court . . . ." [Plan, Docket 527-1, at Section 11.1 (emphasis added)].

18.  Following the Sale Order, Purchaser communicated with WICP and began performing the obligations under the Lease, including by paying rent.

19.  Purchaser appears to have made rental payments for at least February—April 2023. Rental payments for those months were made by NewAge USA, Inc., which Purchaser identified as its subsidiary (now operating as PartnerCo USA, Inc., a Utah corporation) in correspondence with WICP. [See Letter from Purchaser to WICP, attached hereto as Exhibit B, at 2.]

20.  WICP raised concerns about the progress of the buildout for the leased property in or about September 2022. However, after some early progress in late 2022 and early 2023, Purchaser contacted WICP and indicated that they did not want to proceed with the Lease and the affiliated buildout, but instead wanted to renegotiate the terms. [*See* Exhibit B.] Purchaser has since failed to continue with their obligations under the Lease and has not continued the buildout as set forth in the Lease.

21.  Now, over six months after Purchaser and WICP followed the Sale Order and proceeded with their obligations under the Lease and nearly a month and a half after the Debtors' Plan was confirmed, the Purchaser seeks to retroactively amend the Final Purchase Agreement to "un-assign" the Lease and have the Debtors reject the Lease, which Debtors already assumed under the Sale Order.

---

[3] "Final Order" means orders or judgment of this Court which has not been reversed, vacated, or stayed as to which the time for appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired. [Id.at Section 3.1.38.]

**ARGUMENT**

I. **The Motion is procedurally inadequate. The Sale Order, APA, and the Plan do not contemplate retroactive modification of the APA to un-assign leases after the Closing Date of the APA.**

22. The Purchaser argues that it is entitled to retroactively amend the Final Purchase Agreement based on isolated citations to the Plan and the Debtors' Assumption Notice. In so doing, Purchaser fails to discuss the relevant provisions of the two documents that govern the Purchaser's rights and obligations: the Sale Order and the Final Purchase Agreement.

23. Purchaser avers that, after spending six months performing its obligations under the Lease, it has now deemed the Lease "improvident." [*Id.*] While the Purchaser tries to justify its delay by pointing to the accelerated pre-closing due diligence period before the entry of the Sale Order, it was the Purchaser who agreed to the due diligence period provided in the Final Purchase Agreement. That agreement provided Purchaser and Debtor time to determine the contracts to include and exclude prior to assumption, and Purchaser accepted that risk when it tendered its stalking horse bid with the due diligence timeline it contained.

24. Under the approved Final Purchase Agreement, Purchaser had until "one (1) Business Day prior to the final hearing to approve the Sale Motion" to modify the list of contracts and leases to be assumed. [Docket 224-1, at Section 1.5(b).] But, that provision and the Purchaser's argument belies its real role here. From the first entrance of Purchaser in this proceeding as stalking horse bidder, Purchaser had at least from August 30 until October 10 to conduct due diligence. [Plan, Docket 527-1, at Section 2.1.8 (reciting history of bid procedures and noting that DIP Financing entered as stalking horse bidder on August 30, 2022.)]

25. The Final Purchase Agreement contemplated the timing risk for Purchaser and Debtors, and allocated additional time to conduct due diligence prior to the final hearing in October

2022. Presumably, Purchaser made use of this due diligence period, because it rejected several leases in the days leading up to the Sale Order and the Closing Date under the Final Purchase Agreement. [*See* Docket 223, at ¶ 15 (listing contracts removed from the Final Purchase Agreement and removed from the list of assumed contracts.)]

26. Now, Purchaser has held the Lease for over six months. Indeed, it has even partially performed under the Lease: Purchaser has been paying rent to WICP for months and has been discussing its buildout progress with WICP, which has been inadequate under the Lease.

27. The time for this Motion passed by long ago. Under the Final Purchase Agreement, Purchaser's due diligence closed on the final hearing date regarding the Sale Order. [Docket 224-1, at Section 1.5(b).]

28. Notably, Purchaser and Debtors could have provided for post-closing due diligence, but they chose not to do so. *Compare Cityside Archives, Ltd. v. Hudson Hospital Opco, LLC,* 2015 WL 6529903 (D.N.J. October 27, 2015) (asset purchase agreement and sale order provided "for a post-Closing period during which the [purchaser] could assume or exclude contracts").

29. Debtors have recognized the risk that Purchaser's post-closing amendments to the Purchase Agreement would give rise to rejection liability, as they contracted for indemnification from Purchaser in the event that a previously assumed and assigned Lease was later rejected through the actions of Purchaser. [*See* Second Amendment, Docket 611-1, at IV.1.]

30. The Purchaser cannot rely on the Plan as conveying authority to reject leases that have already been assumed, as the Plan's provisions provide exactly the opposite. The Plan contains standard language making clear that "[a]ll executory contracts and unexpired leases to which the Debtors are a party are hereby rejected as of the Effective Date ***except for*** an executory contract or unexpired lease that (i) previously has been assumed," thus providing certainty for any

8

contract counterparty whose contract has not been subject an order directing or approving assumption. [Plan, Docket 527-1, at Section 11.1 (emphasis added).]

31. Contrary to Purchaser's assertion, Section 11.1 of the Plan does not address the situation at hand: it addresses those leases which have not been assumed under an order of this Court. Here, as Purchaser concedes, the Lease <u>has</u> already been assumed and assigned by the Sale Order, whose Exhibit B included the Lease. As Purchaser concedes, the Lease <u>was</u> included in the assumption schedules of the Final Purchase Agreement. [Motion, at ¶ 8.] Moreover, as set forth in the Sale Order, the Debtors were authorized and directed to "assume and assign to Purchaser" the Lease "in accordance with the Final Purchase Agreement, ***effective upon the Closing Date***," which Purchaser has also conceded is long past. [Sale Order, Docket 224, at 19–20; Motion, at ¶ 6.] Upon closing, "Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Assumed Contract." [Sale Order, Docket 224, at 20.]

32. Purchaser's citation to Debtors' Notice of Proposed Assumption and Assignment of Executory Contracts (the "**Notice**") is inapplicable here. That Notice was part of the bidding and stalking horse bid process to provide notice to affected creditors, like WICP, but was not itself a part of the Court's Sale Order other than as part of the requisite notice given *in advance* of the Sale Order and Closing Date of the Final Purchase Agreement.[4] [*See Order (A) Approving Bid Procedures for the Sale of Assets of the Debtors, (B) Approving Bid Protections, (C) Establishing Assumption and Assignment Procedures, (D) Establishing Notice Procedures, and (E) Granting Related Relief* (the "**Bid Procedures Order**"), Docket 105, at 3].

---

[4] Indeed, the Notice, which Purchaser appears to argue is the governing document of its liability under the Final Purchase Agreement, fails to adjust the list of assumed and assigned contracts to reflect changes made to the Final Purchase Agreement in response to the October 11, 2022 final hearing on the Sale Order. *Compare* Notice [Docket 214] (listing the Planful, Talkdesk, and Dell Marketing agreements to be assumed and assigned) *with* Second Certification of Counsel Requesting Entry of Sale Order [Docket 223], at 4 (removing the three agreements from the Final Purchase Agreement and the proposed sale order).

33. Moreover, the Motion fails to request modification of Exhibit B to the Sale Order, which contains the list of contracts which the Sale Order <u>directs</u> Debtors to assume and assign upon the Closing Date of the Final Purchase Agreement. [Sale Order, Docket 224, at 20; Exhibit B thereto, Docket 224-2, at 3.]

34. The Purchaser cites to isolated and irrelevant parts of orders and filings in this matter in an effort to extricate itself from a circumstance for which the Purchaser bargained when it entered into the Final Purchase Agreement and sought the Sale Order. To do so, it cites to no authority under the Rules of Bankruptcy Procedure. And, it cites to no authority under the Final Purchase Agreement, because that agreement by its very terms closed the Purchaser's right to remove leases from the "Assigned Contract" schedules at least as of the Court's October 11, 2022 hearing and certainly following the Closing Date.[5] Moreover, the Motion fails to account for Exhibit B to the Sale Order, which itself orders the assumption and assignment of the Lease upon the Closing Date, which was October 18, 2022.

35. Upon the Closing, the Debtors "assume[d] and assign[ed]" the Assigned Contracts to Purchaser. [Final Purchase Agreement, Docket 224-1, at Section 1.5(a).] The Motion cites to an isolated clause of the Plan intended to account for inadvertently neglected contracts upon the Plan's Effective Date, but fails to cite to the Plan's specification that the rejection process does not address any "executory contract or unexpired lease that previously has been assumed." [Plan, Docket 527-1, at Section 11.1.]

---

[5] In contrast to other asset purchase agreements in other matters, such as *Cityside Archives,* where two different sale orders in bankruptcy proceedings provided for post-closing assumption or rejection. 2015 WL 6529903. The two sale orders in that case both provided for post-closing time for certain "Designated Contracts" to be assumed or rejected by the purchaser and removed from the purchase. *Id.* at *1–2. These cases, unlike Purchaser here, did not rely on their related bankruptcy plan's general provision to cover inadvertently neglected leases, but instead relied on specific bargained-for protections in the purchase agreement and related sale order.

36. The Purchaser's Motion is procedurally improper and was brought at great potential detriment to WICP. Purchaser's long delay has caused WICP to continue to operate under the Lease, delaying the possibility of finding suitable alternative tenants while market conditions for commercial real estate have undergone material changes. WICP has performed its obligations under the Lease, and followed the Court's Sale Order to treat Purchaser as the new assignee under the Lease. Under the terms of the Sale Order and Final Purchase Agreement, Purchaser's due diligence period has long closed, the Lease has already been assumed by the Debtors and assigned to the Purchaser, and the Motion should be denied.

## II.   Purchaser's use of bankruptcy proceedings to adjudicate its post-assignment breach of contract is improper as the Motion implicates non-core matters.

37. What is more, construed generously, this Motion is a request by Purchaser to be forgiven for its anticipatory breach of contract with WICP. That contract, by operation of its assumption by the Debtors and the assignment to WICP and the confirmation of the Debtors' Plan, no longer bears on the Debtors' estate or this proceeding.  As such, it is a non-core proceeding, and Purchaser's use of these proceedings is improper absent consent of WICP. Pursuant to 28 U.S.C. § 157, "[a] bankruptcy judge *may* hear a proceeding that is not a core proceeding" but only to "submit proposed findings of fact and conclusions of law to the district court," which reviews objections to the proposed ruling *de novo*. 28 U.S.C. § 157(c)(1) (emphasis added). Alternatively, the court may decline to hear the matter entirely. 28 U.S.C. § 1334(c)(1).

38. Purchaser seeks to retroactively amend a contract entered into between Debtors and Purchaser to avoid liability for actual or anticipatory breach of contract under the Lease, which Purchaser assumed on the closing. At bottom, this dispute is between two non-debtor entities: the Purchaser, as tenant, and WICP, as landlord. Such an action is not core to the bankruptcy cases at

issue before this Court, and under § 157, this court lacks authority to issue final rulings on the Motion absent all parties consent.

39. Core cases are those that "arise under title 11" meaning those cases that invoke "a substantive right provided by title 11 or is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *In re Longview Power, LLC,* 515 B.R. 107 (Bankr. D. Del. 2014) (quoting *Halper v. Halper,* 164 F.3d 830, 836 (3d Cir. 1999)). Non-core proceedings are those cases that "are nevertheless 'related to' a bankruptcy case" and may even have an "impact on the debtor's rights, liabilities, options, or freedom of action," but which could have arisen outside of the context of a bankruptcy case. *Halper,* 164 F.3d at 836 (internal quotation and citation omitted).

40. Moreover, it is well established that in cases where, as here, the Debtors' Plan has already been confirmed, the Bankruptcy Court's limited "related to" jurisdiction constricts even further, because bankruptcy courts generally have jurisdiction over only the bankruptcy estate, which ceases to exist once a plan is confirmed. *See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161, 169 (3d Cir. 2004). Here, then, the Purchaser must demonstrate that the relief it seeks bears a "close nexus" to the Debtors' bankruptcy estate by showing that it "affect[s] an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding." *Id.*, at 167.

41. There is no such "close nexus" here. Pursuant to the Final Purchase Agreement, Purchaser took over the Lease as an assigned contract. Purchaser has partially performed under this contract—paying rent and continuing the buildout of the property subject to the Lease. Now, however, Purchaser has stopped work on the buildout contemplated by the Lease and instead indicated to WICP that they wanted to renegotiate the contract.

42. Instead of initiating any breach of contract dispute with state or federal courts to apply state contract law, Purchaser has made this motion to 'undo' the assignment of the Lease under the Final Purchase Agreement. Notably, the Motion fails to account for the Court's independent order that the Lease be assumed contained in Exhibit B to the Sale Order, further confusing the exact grounds for Purchaser's Motion.

43. Disputes between two non-debtors over an assumed contract are ancillary to the core bankruptcy proceedings. *See, e.g., Cityside Archives,* 2015 WL 6529903, at *4 (suit by creditor against purchasers of contract for breach of contract was a non-core proceeding, even though it implicated the assignment of the contract as authorized by the bankruptcy court). Pursuant to 28 U.S.C. § 157(c)(1) and § 1334(c)(1), this Court may decline to hear this non-core dispute, and WICP urges the Court to do so.

### III. If the Lease is returned to the Debtors by an amendment to the Final Purchase Agreement, it will be an administrative claim against the estate by virtue of the Debtors' beach or rejection following assumption in October 2022.

44. Finally, the Motion and Debtors' Response are both incorrect in asserting that no party other than WICP is affected by the requested relief. As outlined above, this Motion seeks to reject the WICP lease by (i) amending the Final Purchase Agreement (six months after court approval and closing) to retroactively unwind a portion of the agreement, and (ii) thereby leave the lease within the bankruptcy estate to be rejected after assumption.

45. Such a maneuver has severe consequences for the bankruptcy estate and its creditors. By assuming the lease under the Sale Order, the Debtors have created an administrative claim by WICP in the event that the lease is not considered assigned to the Purchaser. While Debtors' Response vaguely alleges that the rejection should not constitute an administrative claim,

Debtors fail to cite to any authority that would permit the Court to deviate from the requirements of 11 U.S.C. § 503(b)(7).

46. "When a [Debtor] assumes and then rejects an executory contract, however, all of the liabilities flowing from that rejection are entitled to priority as administrative expenses of the estate." *In re Frontier Properties, Inc.,* 979 F.2d 1358 (9th Cir. 1992) (internal citations omitted). Pursuant to section 503(b)(7) of the Bankruptcy Code, "all monetary obligations due" for "a period of 2 years following the later of the rejection date or the date of actual turnover of the premises" are entitled to administrative claim priority for all "nonresidential real property lease[s]." 11 U.S.C. § 503(b)(7). As a consequence, Debtors should act carefully to evaluate "the potential benefits and burdens inhering in an executory contract because, if ***improvidently assumed***, the burdens imposed by the contract may be overwhelming." *In re Multech Corp.,* 47 B.R. 747, 752 (Bankr. N.D. Iowa 1985) (emphasis added).

47. Under the Sale Order, the Debtors assumed all contracts listed on Exhibit B of that Order. [Docket 224, at 1.] In the words of Purchaser, perhaps this decision was "improvident." [Motion, at ¶ 9.] While Purchaser and Debtors may have agreed to now "amend" a contract after the closing and after court approval, Debtors already assumed the Lease in accordance with the Sale Order. [*Id.*] Later discovery that a previously assumed lease may not generate adequate benefits is not grounds to avoid administrative claims in the event of rejection: "When a [Debtor] proves wrong in his gamble that the benefits of an assumed executory contract will outweigh the burdens, the Code requires that unsecured creditors, not the contracting party, bear the risk and suffer the loss." *In re Frontier Properties, Inc.,* 979 F.2d at 1367.

48. The Second Amendment to the Final Purchase Agreement does not change this result. The indemnification contemplated by the Second Amendment is a contractual agreement

between Debtors and Purchaser. Accordingly, Debtors may well have a claim for indemnity against Purchaser to compensate Debtors for damages resulting from the Purchaser's long-delayed request to reject the Lease. However, this contractual right between Debtors and Purchaser does not affect the remedies available to WICP, who is entitled to an administrative claim against the estate. The Bankruptcy Code allocates the risk of rejection damages following assumption to the Debtors, not to WICP.

49.    In addition to the traditional claim allowed for rejection of nonresidential leases, WICP is entitled to an administrative claim worth two years of "all monetary obligations due" under the lease if the Debtor intends to reject the Lease after assuming it in October. Said monetary obligations include those for breach of contract, as a post-assumption rejection <u>is</u> a breach. 11 U.S.C. § 365(h). Said monetary obligations should include WICP's attorney fees in defending WICP's rights and remedies under the Lease, as is provided by the Lease itself. [*See* Lease, attached hereto as <u>Exhibit A</u>, at Section 17.7.]

50.    Setting aside the numerous deficiencies in Purchaser's Motion, it misstates the consequences for the bankruptcy estate and all creditors in this proceeding. Debtors' limited Response is similarly incorrect. As both parties concede, the Final Purchase Agreement directed assumption of the Lease at the Closing—October 17, 2022. Purchaser's Motion is procedurally and jurisdictionally incorrect, but even if the relief Purchaser requests were granted, Purchaser and Debtors misconstrue the consequences for the estate.

## CONCLUSION

This Motion is unusual. More than six months after the Purchaser and Debtors closed the transactions contemplated by the Final Purchase Agreement and a month and a half after the Court confirmed the Debtors' Plan, Purchaser now seeks Court approval to avoid its obligations under

the Lease it purchased under the Final Purchase Agreement. Purchaser also appears to request that the Lease then be deemed rejected following the Court's Sale Order, which approved assumption of the Lease.

Purchaser and Debtors could have crafted procedures to extend due diligence beyond the effective date of the Sale Order and the closing date of the Final Purchase Agreement. Others have done so in the past.[6] Had they done so, perhaps the Purchaser would have been authorized to review a set of disputed or potentially-assumed leases after the closing date, at which time the Purchaser could have declined to take unwanted contracts and the Debtors could have rejected them.

But Purchaser and Debtor did not. Instead, by its terms, the Final Purchase Agreement obligated Debtors to "sell, transfer, assign, convey, and deliver to Buyer, and Buyer shall purchase, acquire, and accept from [Debtors]" all Assigned Contracts. [Docket 224-1, at Section 1.1.] The Final Purchase Agreement expressly contemplated that all Assigned Contracts would be determined <u>as of the closing</u>. [*Id.* at Section 1.5(a).] The Sale Order's Exhibit B contains a list of contracts, including the Lease, which the Court ordered Debtors to assume and assign to Purchaser. [Sale Order, Docket 224, at 20]. Purchaser and Debtors did not provide for post-closing due diligence. Creditors and interested parties like WICP who chose not to object to the Sale Order were not given notice of any post-closing due diligence, and Purchaser cannot now add post-closing authority through a procedurally dubious motion.

WHEREFORE, WICP respectfully requests that the Court deny the Motion in its entirety. Neither the Sale Order nor the Final Purchase Agreement provide for this mechanism, and nothing in the Plan changes that analysis. To the extent that Purchaser desires to breach its Lease with

---

[6] *See supra* Note 5.

16

WICP, it may do so outside of these bankruptcy proceedings and without seeking this Court's imprimatur.

WHEREFORE, in the event that the Court is inclined to authorize this modification of the Final Purchase Agreement, WICP respectfully requests that the Court recognize that Debtors already assumed the Lease and that, if the Lease is deemed rejected as a consequence of the modification, the Debtors' bankruptcy estates will be subject to an administrative claim by WICP pursuant to 11 U.S.C. 503(b)(7) for all "monetary obligations due, excluding those arising from or relating to a failure to operate or a penalty provision, for the period of 2 years following the later of the rejection date or actual turnover of the premises" under the lease.

WHEREFORE, WICP respectfully requests that the Court award WICP its attorneys' fees and costs related to defending WICP's rights under the Lease, the Sale Order, and the Final Purchase Agreement. WICP has been forced to secure local counsel on short notice to prepare and file this Response to the Motion which, as identified herein, contains numerous deficiencies. The Lease provides for attorneys fees that are incurred in event that the tenant defaults or breaches the terms of the agreement. [Lease, Ex. A, at Section 17.7.] Purchaser should have litigated its rights under the Lease in the proper forum. Assuming the Motion is denied entirely, WICP requests the award be against Purchaser. In the event the Court grants the Motion's request to un-assign the lease and reject it, WICP requests the award be an administrative claim against Debtors.

*Remainder of page intentionally left blank.*

Dated: April 26, 2023
      Wilmington, DE     **BAYARD, P.A.**

*/s/ Daniel N. Brogan*
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone:  302-655-5000
Facsimile:  302-658-6395
Email:  dbrogan@bayardlaw.com

*Counsel for WICP MT TECH 4, LLC*