**<u>EXHIBIT A</u>**

DocuSign Envelope ID: 21C2E061-2B0D-43D9-A687-6A124F9B5F56

## WICP MT TECH 4 LLC

## OFFICE/WAREHOUSE LEASE

9/30/2021

# INDEX

|  |  |  | PAGE |
|---|---|---|---|
| 1. | ARTICLE I. | Definitions and Certain Basic Provisions | 4 |
| 2. | ARTICLE II. | Granting Clause and Acceptance | 3 |
| 3. | ARTICLE III. | Monthly Payment | 7 |
| 4. | ARTICLE IV. | Common Area | 7 |
| 5. | ARTICLE V. | Use and Care of Premises | 9 |
| 6. | ARTICLE VI. | Maintenance and Repair of Premises | 10 |
| 7. | ARTICLE VII. | Alternations | 12 |
| 8. | ARTICLE VIII. | Landlord's Right of Access; Use of Roof | 13 |
| 9. | ARTICLE IX. | Signs | 14 |
| 10. | ARTICLE X. | Utilities | 14 |
| 11. | ARTICLE XI. | Indemnification; Public Liability Insurance and Fire and Extended Coverage Insurance | 15 |
| 12. | ARTICLE XII. | Non-Liability for Certain Damages | 16 |
| 13. | ARTICLE XIII. | Damages by Casualty | 17 |
| 14. | ARTICLE XIV. | Eminent Domain | 18 |
| 15. | ARTICLE XV. | Assignment and Subletting | 18 |
| 16. | ARTICLE XVI. | Property Taxes | 20 |
| 17. | ARTICLE XVII. | Default by Tenant and Remedies | 21 |
| 18. | ARTICLE XVIII. | Landlord's Lien | 26 |
| 19. | ARTICLE XIX. | Holding Over | 27 |
| 20. | ARTICLE XX. | Subordination and Park Covenants | 27 |
| 21. | ARTICLE XXI. | Notices | 28 |

3/29/99

2

22.    ARTICLE XXII.    Late Charges.............................................................................29

23.    ARTICLE XXIII.   Miscellaneous..........................................................................29

         ATTACHMENTS:              Rules and Regulations..................................................EXHIBIT A
                                   Building Plan...............................................................EXHIBIT B
                                   Tenant Improvements..................................................EXHIBIT C
                                   Personal Guarantee ....................................................EXHIBIT D
                                   Minimum Base Rent ...................................................EXHIBIT E
                                   Acknowledgment of Commencement Date................ EXHIBIT F
                                   Buildout Plans ............................................................EXHIBIT G

3

9/30/2021

**WICP MT TECH 4 LLC**
**OFFICE/WAREHOUSE LEASE**

This Office/Warehouse Lease ("**Lease**"), entered into this _____ day of September, 2021 by and between Landlord and the Tenant hereinafter named, relative to 2632 W. 400 N. Lindon, Utah 84042 ("**Property**"). In consideration of the rents to be paid by Tenant, and of the covenants, terms and conditions to be kept and performed as herein provided, Landlord does hereby lease unto Tenant and Tenant does hereby accept a lease on the Described Premises, as defined below.

### ARTICLE I.  Definitions and Certain Basic Provisions

**1.1**   Basic Lease Provisions. Wherever used in this Lease, the following terms (each a "**Basic Lease Provision**") shall have the meanings provided for in this Section.  Each reference in this Lease to any of the Basic Lease Provisions in this Section 1.1 shall be deemed and construed to incorporate all of the terms provided under such Basic Lease Provision, provided that the Basic Lease Provisions shall be controlled by the specific terms and provisions of this Lease relating to the subject matter of the Basic Lease Provision.

**(a)**   "**Landlord**":  WICP MT TECH 4, LLC

**(b)**   Landlord's mailing address: PO Box 631 Pleasant Grove, Utah 84062

**(c)**   "**Tenant**":  NewAge, Inc.

**(d)**   Tenant's current mailing address:  ____2420 17th Street, Denver, CO 80202

**(e)**   Tenant's trade name:  NewAge, Inc.____

**(f)**   Tenant's proposed future address: 2630 W. 400 N., Ste. 600, Lindon, Utah 84042

**(g)**   "**Demised Premises**":    Approximately 32,698 square feet, computed from measurements to the exterior of outside walls of the office/warehouse building located on the Property ("**Building**") and to the midpoint of interior demising walls (the "**Rentable Area**"), such premises being commonly known as Suite 600 of the Property, and shown and outlined more particularly on the plan attached hereto as Exhibit B, and being part of the project situated upon the Property.  The above estimated Rentable Area of the Demised Premises may be revised, at Landlord's election, if Landlord's architect determines such estimate to be inaccurate in any material degree.  In the event of such revision of the Rentable Area of the Demised Premises, any amounts determined on the basis of the Rentable Area shall be adjusted proportionately, including without limitation, the Minimum

4

9/30/2021

Base Rent, Common Area Maintenance Charge, Insurance Payment, Tax Payment, and Security Deposit (all defined below).

This Lease shall include the nonexclusive right to use the parking areas, roadways, means of ingress and egress, sidewalks, restrooms, lobby areas and other areas, and surroundings of the project which are included for the common use and enjoyment of Tenant and third persons (the "**Common Areas**"). Tenant shall have access to approximately thirty-two (32) parking stalls located in front of the Demised Premises.

(h)    "**Lease Term**":    The parties anticipate the lease will commence on approximately October 1, 2021 (the "**Anticipated Commencement Date**") and end 66 months thereafter. In order to meet the Anticipated Commencement Date, the Tenant must timely respond to requests for information, documents or plans as requested by the Landlord. This includes the Tenant providing its plans for the anticipated buildout (the "**Buildout**") of the Demised Premises to the Landlord no later than September 15, 2021, which shall be attached to this Lease as Exhibit G. Notwithstanding the foregoing, the "**Commencement Date**" of the Lease Term shall be the earlier of (i) the date Tenant takes possession of the Demised Premises; or (ii) the date the Buildout is substantially completed, a certificate of occupancy (or a certificate of temporary occupancy, as applicable) is issued, and Landlord makes the Demised Premises available to Tenant.

If Tenant needs to occupy the Demised Premises prior to the completion of the Buildout, Landlord and Tenant shall work together to reach a mutually beneficial agreement for early occupancy. To resolve ambiguity, such early occupancy shall be considered Tenant's possession of the Demised Premises for purposes of determining the Commencement Date. Additionally, the early occupancy shall continue until the sooner of (y) one hundred twenty (120) days after the Commencement Date or (z) the Buildout's substantial completion.

(i)    "**Minimum Base Rent**": For the first four months of the Lease Term, the Minimum Base Rent for the Demised Premises shall be $0.55 per rentable square foot, or an estimated $17,983.90 per month. The Minimum Base Rent for the fifth and sixth months after the Commencement Date (the "**Abatement Period**") shall abated in their entirety, subject to Tenant's compliance with the Lease. After such Abatement Period, the Minimum Base Rent for the entire Demised Premises shall be $0.86 per rentable square foot, or an estimated $28,120.28 per month. The Minimum Base Rent shall increase thereafter in accordance with the schedule set forth on Exhibit E. The Minimum Base Rent shall be paid in equal monthly installments in advance or by the 1st of each month by wire transfer or electronic payment into the account designated by the Landlord. Any Prepaid Rental (as defined below) that shall be due upon the execution of this Lease is set forth in Article I, Section 1.1(n), and the same shall be applied towards Tenant's monthly Minimum Base Rent charges under this Lease until such Prepaid Rental is exhausted. Notwithstanding the foregoing, on or before the first day of the first month of the Lease Term, the Tenant shall pay the triple net fees (NNN fees) for the first month of the Lease Term, along with any amortized amount of rent for the days the space was occupied before the 1st day of the first month of the Lease Term, Tenant's

5

percentage of the proportionate share of expenses attributable to all tenants, and any other amounts due under this Lease.

     **(j)**     Estimated Initial NNN charge per month: $0.17 per rentable square foot or $5,558.66 dollars. The foregoing charge includes the estimated initial Common Area Maintenance Charge, Insurance Payment, and Tax Payment, as described herein. The same may later be modified or adjusted as set forth in this Lease.

     **(k)**     Estimated Initial NNN charge per year: $66,703.92

     **(l)**     Other initial charges: $5,000.00, which shall be deposited on the date of execution of this lease, and which shall be applied to the Security       Deposit. Such amount shall not be refundable under any circumstances.

     **(m)**     "Security Deposit":     $32,599.11, which is equal to the last month's Minimum Base Rent of the Lease Term.

     **(n)**     "Prepaid Rental":     $28,120.28, which is equal to the third month's Minimum Base Rent of the Lease Term.

     **(o)**     Tenant's percentage of its proportionate share of expenses attributable to all tenants of the Property is initially estimated to be approximately 32.8 % (calculated by dividing the total number of square feet in the Demised Premises by the total number of rentable square feet of the Property); provided, however, that if the total area of rentable square feet of the Property is reduced by reason of a destruction, sale, or condemnation of any individual buildings comprising the Property, then Tenant's proportionate share of such expenses shall be redetermined based on the relationship of the number of square feet in the Demised Premises to the total remaining number of rentable square feet of the Property.

     **(p)**     Within ten (10) days of signing this Lease, Tenant shall provide Landlord its profit and loss statements and filed tax returns for the preceding two (2) years, as well as its profit and loss statements for the most recent quarter as filed by the company with the Securities and Exchange Committee.

     **1.2**    Notices. Any notice required or permitted hereunder to be given or transmitted between the Parties shall be either personally delivered or mailed postage prepaid by certified mail, return receipt requested addressed as follows:

TO TENANT:                   NewAge, Inc.
                                   Attn: _Kevin Manion_____
                                   2420 17th Street, Denver CO 80202

9/30/2021

TO LANDLORD:

WICP MT TECH 4 LLC
PO Box 631
Pleasant Grove, Utah 84062

## ARTICLE II.  Granting Clause, Improvements and Acceptance

**2.1**    Lease of Property. In consideration of the obligation of Tenant to pay rent and other charges as herein provided and in consideration of the other terms, covenants, conditions and promises hereof, Landlord hereby demises and leases to Tenant, and Tenant hereby leases from Landlord, the Demised Premises as described in Article I, Section 1.1(g), TO HAVE AND TO HOLD said Demised Premises for the Lease Term specified in Article I, Section 1.1(h), all upon the terms and conditions set forth in this Lease.

**2.2**    Option to Renew. Tenant will have the right and option to extend the Term for two (2) consecutive renewal periods of five (5) years (each, a "**Renewal Term**"). Tenant will exercise its right and option for each Renewal Term by providing written notice to Landlord not later than six (6) months before the expiration of the Lease Term. If Tenant fails to timely give written notice exercising its option to extend for a Renewal Term, its right to extend will be void. Tenant will not have any renewal rights if it is in material default under the Lease (with any applicable grace and cure period having expired). The provisions of this Lease will apply during the Renewal Term. All references to "Term" in this Lease will also be deemed to include Renewal Terms if and to the extent Tenant's right to a Renewal Term is timely and properly exercised, provided, however the Basic Annual Rent for any Renewal Term will at  fair market rents not less than three percent and continuing at three percent annual base rental increases (3%).

## ARTICLE III.  Monthly Payment

**3.1**    Monthly Payments in General. The Tenant shall be responsible for all additional payments, including NNN which will be paid monthly in addition to the Minimum Monthly Rent Payment. All sums due each month shall hereinafter be referred to as a "**Monthly Payment**". Without limiting the generality of the foregoing, the estimated total initial Monthly Payment to be made by Tenant to Landlord for the first 12 months, and as adjusted annually thereafter as detailed Exhibit E attached hereto, subject to adjustment as provided herein, shall be $33,678.94. This initial Monthly Payment shall mean the sum of the monthly installments of: (a) the Minimum Base Rent as set forth in Article I., Section 1.1(i); (b) the Initial NNN charge as set forth in Article I, Section 1.1(j); and (c) such other payments as are required under the terms of this Lease for each respective month.

**3.2**    Payment Accrual. The Monthly Payment, as specified in Section 3.1 herein, and all other monetary obligations hereunder, shall accrue hereunder from the Commencement Date and shall be payable by wire transfer or electronic payment into the account designated by the Landlord,

7

9/30/2021

DocuSign Envelope ID: 21C2E061-2B0D-43D9-A687-6A12458B5F66

without demand and without setoff or deduction, for any reason whatsoever, except as herein provided, and subsequent payments shall be due and payable on or before the first day of each succeeding calendar month during the Lease Term; provided that if the Commencement Date is a date other than the first day of a calendar month, there shall be due and payable on or before such date as monthly payment for the balance of such calendar month, a sum equal to that proportion of the rent specified for the first full calendar month, as herein provided, which the number of days from the Commencement Date to the end of the calendar month during which the Commencement Date shall fall bears to the total number of days in such month.

(a)     <u>Increases to Minimum Base Rent</u>.  Tenant shall pay the monthly installments of the Minimum Base Rent as same come due. The Minimum Base Rent shall increase annually, as set forth on <u>Exhibit E</u>.

## <u>ARTICLE IV.  Common Area</u>

**4.1**     <u>Common Areas in General</u>.  The "**Common Area**" is that part of the property designated by Landlord from time to time for the common use of all tenants, including among other facilities, the parking areas, sidewalks, landscaping, curbs, loading areas, private streets, and alleys, lighting facilities, hallways, canopies, restrooms, and other areas and improvements provided by Landlord for the common use of all tenants of the property, all of which shall be subject to Landlord's sole management and control and shall be operated and maintained in such manner as Landlord, in its sole discretion, shall determine.  Landlord reserves the right to change from time to time the dimensions and location of the Common Area as well as the location, dimensions, identity, and purpose of the Building, and to construct additional buildings or additional stories on existing buildings or other improvements in the Property, and to eliminate buildings from the Property. Landlord reserves the right to effect changes to the configuration, type or number of parking spaces as may be deemed necessary in Landlord's sole judgment, but such changes shall maintain at least the minimum parking as required by code or other applicable law.  Tenant and its employees, customers, subtenants, licensees, and concessionaires shall have the nonexclusive right and license to use the Common Area as constituted from time to time, such use to be in common with Landlord, other tenants of the Property and other persons permitted by Landlord to use the same, and subject to such reasonable rules and regulations governing use as Landlord may from time to time prescribe and as defined hereinafter, including the designation of specific areas within the Property or in reasonable proximity thereto in which automobiles owned by Tenant, its employees, subtenants, licensees or concessionaires may park.  Tenant shall not solicit business or distribute handbills within the Common Area, shall not be parked improperly, or take any action that, in the Landlord's sole discretion, would interfere with the right of other persons to use the Common Area, without prior written consent of the Landlord.  Landlord may temporarily close any part of the Common Area for such periods of time as may be necessary to prevent the public from obtaining prescriptive rights or to make repairs or alterations.

9/30/2021

**4.2** <u>Common Area Maintenance Charges in General</u>. Tenant agrees to pay as additional rent each month during the term of this Lease, as part of its Monthly Payment, all of its proportionate share of the "**Common Area Maintenance Charge**" as more fully described herein. Each such monthly Common Area Maintenance Payment shall be due and payable at the same time and in the same manner as the payment of Minimum Base Rent. The Common Area Maintenance Charge shall include the cost of managing, operating and maintaining the Common Area (including, among other costs, a management fee at 5% of net lease, legal and other professional fees that are directly incurred or an expense related to the management and maintenance of the Property, those costs incurred for lighting, heating, air conditioning, water, sewerage, painting, cleaning, policing, insuring, inspecting, paving, signage and interior common areas (if any) including restrooms, corridors and elevators, and of all exterior gutters and downspouts, exterior building appliances and common electrical, landscaping, exterior irrigation, repairing, replacing, guarding and protecting) which may be incurred by Landlord in its sole discretion. The proportionate share to be paid by Tenant of the cost of operation and maintenance of the Common Area shall be computed on the ratio that the total area of the Demised Premises bears to the gross leasable area of the Property, as such gross leasable area may be determined from time to time in Landlord's sole discretion. Landlord shall make monthly or other periodic charges based upon the estimated annual costs as herein defined, payable in advance subject to adjustment after the end of the year on the basis of the actual cost for such year. Landlord shall provide an accounting of the specific monthly, annual, and periodic costs that comprise the Common Area Maintenance Charge and the NNN charge. Any such periodic charges shall be due and payable upon delivery of notice thereof and after a reasonable period for Tenant to review the charges, not to exceed 30 days. The initial Common Area Maintenance Charge, subject to adjustment as provided herein, shall be included in the NNN charge amount set out in Article I, Section 1.1(j) and may be amended as above and subject to adjustments set out in Section 4.3. Every statement given by Landlord pursuant to Section 4.3 (each a "**Landlord's Statement**") shall be conclusive and binding upon Tenant unless within three (3) months after the receipt of such statement Tenant shall notify Landlord in writing that it disputes the correctness thereof. If Tenant makes a timely dispute pursuant to the preceding sentence, Tenant may appoint an advisor to investigate the matter, who may not be compensated on a contingency basis. Such advisor may, for the purpose of verifying the Common Area expenses, inspect the records supporting the charges reflected in Landlord's Statement, including such materials and statements for previous years, as applicable, at a reasonable time mutually agreeable to Landlord and Tenant, provided that such inspection shall not disrupt the normal business operations of Landlord. The parties recognize the confidential nature of Landlord's books and records and hence agree that, before Landlord shall afford Tenant's advisor reasonable access to such books and records, it shall be entitled to require Tenant's advisor, and any other person who may see or otherwise become aware of the contents of Landlord's books and records or the information set forth therein, to execute a confidentiality agreement of Landlord's choosing. If the advisor or persons described in the preceding sentence fail to sign the confidentiality agreement designated by Landlord, Tenant shall waive its right to dispute the Landlord Statements at issue. In addition to the foregoing restrictions, Tenant may not dispute any Landlord's Statement more than once, and Tenant may not request to inspect Landlord's books and records more than five (5) times in any given twelve (12) month period. In the event that Tenant disagrees with the costs included in the Common Area Maintenance Charge or the NNN

9

9/30/2021

fees, Landlord and Tenant shall meet and confer about the appropriateness of the costs included in such fees and may agree to change the Common Area Maintenance Charge or the NNN fees.

**4.3** <u>Adjustments to Common Area Maintenance Payment</u>. Tenant authorizes Landlord to use the funds paid pursuant to this Article to pay the Common Area Maintenance. The initial Common Area Maintenance Payment is based upon Tenant's proportionate share of the estimated amount of Common Area Maintenance costs for the year of the execution of this Lease, and such monthly Common Area Maintenance Payment is subject to increase or decrease as determined by Landlord to reflect an accurate monthly payment of Tenant's estimated proportionate share of the Common Area Maintenance charges. Tenant's Common Area Maintenance Payments shall be reconciled annually. If Tenant's total annual Common Area Maintenance Payments are less than Tenant's actual pro rata share of the Common Area Maintenance Payments, Tenant shall pay to Landlord upon demand the difference. If the total annual Common Area Maintenance charges are more than Tenant's actual pro rata share of the Common Area Maintenance charges, Landlord shall retain such excess and credit it to future Common Area Maintenance Payments due from Tenant. Tenant's proportionate share of the Common Area Maintenance Payments shall be computed by multiplying the Common Area Maintenance charges by a fraction, the numerator of which shall be the number of square feet of floor area in the Demised Premises and the denominator of which shall be the number of gross leasable square feet of the Property, as may be determined from time to time by the Landlord.

## ARTICLE V.  Use and Care of Premises

**5.1** <u>Permitted Use of the Demised Premises</u>. Tenant shall use the Demised Premises for general warehouse purposes and related office uses only. Tenant shall, at its sole cost and expense, obtain any and all licenses and permits required for the transaction of business in the Demised Premises and otherwise comply with all applicable laws, ordinances and government regulations. Tenant shall indemnify and hold Landlord harmless against any loss, claim, injury, damage, expense, or liability resulting from any violation of applicable law, ordinance, or government regulation by Tenant or by any employee, agent, customer, licensee, or invitee of Tenant. Tenant shall not, without Landlord's permission, use or do, or allow anything to be used or done upon the Demised Premises which will increase or invalidate any policy of insurance now or hereafter carried on the Building or on any of the contents thereof, or which may be dangerous, explosive or that may be damaging to life and limb or which will cause an increase in the rate of fire insurance on the building. If Landlord grants said permission it shall be solely on the condition that Tenant shall pay as additional rent, on demand, any increase in insurance premiums on the Building or on the contents thereof due to Tenant's use or occupation of the Demised Premises. Tenant shall not in any manner deface or injure the building or any part thereof, or overload the floors of the Demised Premises. Throughout the Term, Tenant shall possess, operate, and use the Demised Premises consistent with the standard operations of other reasonably similar businesses. Tenant shall not vacate, abandon, or desert the Demised Premises. Violation of this Section shall constitute an event of default.

9/30/2021

The Demised Premises may be used only for the purpose or purposes specified above, and for no other purpose or purposes without the prior written consent of Landlord. Tenant shall conduct and carry on in the entire Demised Premises the type of business and purpose for which the Demised Premises are leased. Notwithstanding the above, no such prohibition shall relieve Tenant of any liability for any of its other obligations under this Lease.

**5.2** <u>Property Stored on the Demised Premises</u>. All property kept, stored or maintained within the Demised Premises, in the Common Areas, or otherwise on the Property by Tenant shall be at Tenant's sole risk. Tenant waives liability of Landlord for any and all loss of property kept, stored, or maintained in the foregoing areas, except for any and all loss of property caused by the gross negligence or intentional misconduct of the Landlord, and Tenant shall indemnify and hold Landlord harmless against any loss, claim, injury, damage, expense, or liability resulting from such loss of property except for any and all losses, claims, injuries, damages, expenses, or liabilities resulting from Landlord's gross negligence or intentional misconduct.

**5.3** <u>Nuisances Prohibited</u>. Tenant shall not permit any objectionable or unpleasant odors, noises or sights to emanate or be visible from the Demised Premises, nor place or permit any radio, television, loudspeaker or amplifier on the roof or outside the Demised Premises or where the same can be seen or heard from outside the Building or in the Common Area, nor take any other action which in the exclusive judgment of Landlord would constitute a nuisance or would disturb or endanger other tenants of the Property or unreasonably interfere with their use of their respective premises; nor place an antenna, awning, aerial or other projection on the exterior of the Demised Premises. Any such device installed without Landlord's prior written consent shall be subject to removal without notice, and Landlord shall not be held liable for any loss or damage resulting from such removal. Tenant shall not solicit business or distribute leaflets or other advertising material in the Common Area; nor do anything which would diminish or tend to injure the reputation of the Property or Landlord.

**5.4** <u>Waste Prohibited</u>. Tenant shall take good care of the Demised Premises and keep the same free from waste at all times. Tenant shall keep the Demised Premises, service-ways and loading areas adjacent to the Demised Premises neat, clean and free from dirt, rubbish, insects and pests at all time, and shall store all trash and garbage within the Demised Premises, arranging for a regular pickup of such trash and garbage at Tenant's expense. Tenant shall not operate an incinerator or burn trash or garbage within the Property.

**5.5** <u>Adherence to Rules and Regulations</u>. Tenant hereby agrees to abide by all of the rules and regulations as set forth by the Landlord attached hereto as <u>Exhibit A</u> and as may be from time to time modified in the sole discretion of the Landlord for the safety, care and cleanliness of the Demised Premises and the preservation of the Demised Premises. The rules and regulations attached hereto as <u>Exhibit A</u> are hereby expressly made a part of the attached Lease, and Tenant agrees to obey all of the rules and regulations herein contained or as may be modified, added to or amended and published from time to time during the term of the Lease.

11

9/30/2021

## ARTICLE VI. Maintenance and Repair of Premises

**6.1**    Landlord's Maintenance Obligations. Landlord shall, at its expense, keep the foundation, the exterior walls (except plate glass windows, doors, door closure devices, window and door frames, molding, locks and hardware and painting or other treatment of same) and roof of the Demised Premises in good repair, except that Landlord shall not be required to make any repairs, occasioned by the willful act or negligence of Tenant, its agents, employees, subtenants, licensees and concessionaires, which repairs shall be timely made by Tenant at its sole expense.  In the event that the Demised Premises should become in need of repairs required to be made by Landlord hereunder, Tenant shall give immediate written notice thereof to Landlord and Landlord shall not be responsible in any way for failure to make any such repairs until a reasonable time shall have elapsed after delivery of such written notice.  Landlord's obligations hereunder are limited to repairs specified in this Article VI, Section 6.1 only, and Landlord shall have no liability for any damages or injury arising out of any condition or occurrence causing a need for such repairs.  Landlord shall not be responsible in any way for any damage or injury resulting from a condition needing repair if Tenant fails to give written notice of such condition unless such damage or injury results from Landlord's gross negligence or intentional misconduct.

**6.2**    Tenant's General Maintenance Obligations. Tenant shall keep and maintain the Demised Premises in good order, condition and repair, and, except as provided in Paragraph 6.1 above, shall diligently provide all maintenance and promptly make all repairs or replacements becoming necessary during the term of this Lease including, but without limitation, maintenance, repairs or replacements of windows, doors, glass or plate glass (which shall be replaced with glass or plate glass of the same size and quality), light bulbs and tubes, electrical, fire sprinkler, plumbing and sewage lines and fixtures within the Demised Premises, and all heating, air conditioning and ventilating equipment and ducts and vents attached thereto, including any of such equipment which may, with Landlord's consent, be mounted on the roof of the building, all interior walls and finish work, floors and floor coverings, ceilings, interior downspouts, all dock lifts, dock conveyors, dock bumpers, truck doors, fire extinguishers and building appliances of every kind.  Nothing herein is intended to relieve Tenant from, and Tenant agrees to be responsible for, the maintenance and repair or replacement of the heating, ventilating and air conditioning system for the Demised Premises.  Tenant shall keep the Demised Premises, sidewalks and loading areas adjacent thereto clean and free of all dirt and refuse.  Tenant shall provide at its own expense custodial service, insect and pest control service performed at intervals determined by Landlord, rubbish removal and all other services and supplies necessary to maintain the Demised Premises.

**6.3**    Failure by Tenant to Maintain; Surrender of Premises. If any repairs required to be made by Tenant hereunder are not made within ten (10) days after written notice is delivered to Tenant by Landlord, Landlord may, at its option, make such repairs without liability to Tenant for any loss or damage which may result by reason of such repairs, and Tenant shall pay to Landlord immediately upon demand, as additional rent hereunder, the cost of such repairs plus ten percent (10%) of the amount thereof and failure to do so shall constitute an event of default hereunder.  At the expiration

12

9/30/2021

of this Lease, Tenant shall surrender the Demised Premises in good condition, reasonable wear and tear excepted and shall surrender all keys for the Demised Premises to Landlord.

**6.4** <u>Landlord's HVAC Option</u>. Landlord shall have the option, at its sole discretion, of performing the regular monthly maintenance on the heating, ventilation and air conditioning ("**HVAC**") unit(s) serving the Demised Premises throughout the term of this Lease. Should Landlord elect to exercise the foregoing option, the Tenant's proportional share of the costs therefore shall be added to the Common Area Maintenance Charge as set forth in Section 4.2 of this Lease. In the event emergency or extraordinary repairs to the HVAC system of the Demised Premises are required, the total cost of such repairs shall be charged to the Tenant as additional rent. Should Landlord elect to exercise the option set forth in this Section, Landlord may at any time discontinue furnishing such maintenance upon written notice to Tenant, without obligation or liability to Tenant. The option set forth in this Section does not create an obligation of Landlord to provide or construct any HVAC systems in the Demised Premises, in the Building, or on the Property.

**6.5** <u>Tenant' HVAC Obligations</u>. In the event the Landlord does not exercise its election as set forth in Section 6.4 above, Tenant, at its sole cost and expense, shall maintain the heating, ventilation, and air conditioning ("HVAC") unit(s) serving the Demised Premises in good condition and repair throughout the term of this Lease. As a part of its HVAC maintenance obligation, Tenant shall enter into an annual contract with an HVAC maintenance firm, fully licensed to repair and maintain HVAC equipment in Utah County, Utah, which contract shall provide that said firm shall:

(a)     regularly service the HVAC unit(s) serving the Demised Premises on a monthly basis, changing belts, filters and other parts as required;

(b)     perform emergency and extraordinary repairs on the HVAC unit(s); and

(c)     keep a detailed record of all services performed on the HVAC equipment serving the Demised Premises and prepare a yearly service report to be furnished to Tenant at the end of each calendar year.

Tenant shall furnish to Landlord at the end of each calendar year during the Lease Term, a copy of said yearly service report. Not later than ten (10) days prior to the Commencement Date and annually thereafter, Tenant shall furnish to Landlord a copy of the HVAC maintenance contract described above, and proof that the annual charge for said maintenance contract has been paid.

Upon, or within thirty (30) days prior to termination of this Lease, Tenant will provide, at Tenant's sole cost and expense a certification of the HVAC system by a contractor acceptable to Landlord. In the event said certification indicates any deferred maintenance or other conditions other than normal wear and tear, Tenant shall promptly cause any such conditions to be remedied prior to the termination of the Lease at Tenant's sole cost and expense, by a contractor acceptable to Landlord. All damage to the Demised Premises caused by the removal of trade fixtures and other personal

13

9/30/2021

property that Tenant is permitted to remove under the terms of this Lease and/or such restoration shall be repaired by Tenant at its sole cost and expense prior to termination.

**6.6**    <u>Interference with Use.</u> In performing any repairs, replacements, alterations, or other work performed on or around the Premises, Landlord shall use commercially reasonable efforts to not cause unreasonable interference with the use of the Premises by Tenant. Tenant has no right to an abatement of Rent nor any claim against Landlord for any inconvenience or disturbance resulting from any activities permitted under this Lease.

Tenant may prepare a non-disturbance and attornment agreement (a "**Non-Disturbance Agreement**") for its benefit, which shall be in a form and substance reasonably acceptable to both Tenant and Landlord. Landlord shall request that each holder of a mortgage of the Building execute such Non-Disturbance Agreement, and Landlord shall deliver the executed copies of the same to Tenant. If there is a conflict between the Non-Disturbance Agreement and this Lease, the terms of this Lease shall control.

## **ARTICLE VII.  Alterations**

**7.1**    <u>Alterations to the Demised Premises in General.</u> Tenant shall not make any alterations, additions or improvements to the Demised Premises without the prior written consent of Landlord, except for the installation of unattached, movable trade fixtures which may be installed without drilling, cutting or otherwise defacing or damaging the Demised Premises. All alterations, additions, improvements and fixtures (other than unattached, movable trade fixtures), which may be made or installed upon the Demised Premises shall remain upon and be surrendered with the Demised Premises and become the property of Landlord at the termination of this Lease, unless Landlord requests their removal, in which event Tenant shall remove the same and restore the Demised Premises to their original condition at Tenant's expense. Any linoleum, carpeting or other floor covering which may be cemented or otherwise affixed to the floor of the Demised Premises is a permanent fixture and shall become the property of Landlord without credit or compensation to Tenant. Landlord reserves the right to review and approve any and all proposed plans and specifications with respect to any alterations, additions or improvements to the Demised Premises.

**7.2**    <u>Alteration Standards and Indemnification.</u> All construction work, including, without limitation, all alterations, additions and improvements, done by Tenant within the Demised Premises shall be performed in a good and workmanlike manner, in compliance with all governmental requirements, as amended from time to time, and the requirements of any mortgage, deed of trust, security deed, ground lease, or other agreement to which the Landlord may be a party, and in such manner as to cause a minimum of interference to Landlord and its employees, agents, customers, licensees, and invitees; to other tenants and their employees, agents, customers, licensees, or invitees; to other construction in progress on or about the Property; and to the transaction of business in or about the Property. Tenant shall immediately repair, at Tenant's expense, any and all portions of the Property affected by such work. Tenant agrees to indemnify Landlord and hold it harmless against

14

any loss, liability or damage resulting from such work, and Tenant shall, if requested by Landlord, furnish bond or other security satisfactory to Landlord against any such loss, liability or damage.

**7.3** <u>Roof Alterations</u>. Tenant agrees that all venting, opening, sealing, waterproofing or any altering of the roof shall be performed at Tenant's expense by a licensed roofing contractor approved in advance by Landlord in writing, and in accordance with plans and specifications approved by Landlord, and that when completed, Tenant shall furnish to Landlord a certificate from such roofing contractor that all those alterations have been completed in accordance with the plans and specifications therefore as approved by Landlord.

**7.4** <u>Wiring Alterations</u>. Tenant agrees that in the event any wiring may be required for telephone, appliances, office equipment or other purposes, the installation thereof shall be under the sole direction of Landlord; and without Landlord's consent and direction, no installation, boring or cutting for wires shall be permitted.

**7.5** <u>Liens Prohibited</u>. Landlord and Tenant expressly agree and acknowledge that no interest of Landlord in the Demised Premises, the Building, or the Property shall be subject to any lien for improvements made by Tenant in or for the Demised Premises, and the Landlord shall not be liable for any lien for any improvements made by Tenant, such liability being expressly prohibited by the terms of this Lease. Tenant hereby agrees to inform all contractors and materialmen performing work in for or supplying materials to the Demised Premises of the existence of the terms of this paragraph. In the event any such lien is claimed against the Demised Premises or any portion of the Building or Property, then Tenant shall discharge same or transfer such lien to other security within twenty (20) days of written notice or otherwise remove any liens, then, in addition to any other right or remedy of Landlord, Landlord may, but shall not be obligated to, discharge the same. Any amount paid by Landlord for any of the aforesaid purposes shall be reimbursed by Tenant to Landlord within ten (10) days of Landlord's demand therefore.

## <u>ARTICLE VIII. Landlord's Rights; Use of Roof</u>

**8.1** <u>Landlord's Right of Entry</u>. Landlord shall have the right to enter the Demised Premises, the Building, the Common Areas, the Property, and the other leasable areas on the Property, and the right to allow third parties to enter the same, at any reasonable time for the purpose of inspecting the same; the purpose of performing such repairs, alterations or additions as Landlord may deem necessary or desirable; or the purpose of showing the same to prospective purchasers, lessees or lenders.

Further, Landlord shall have the right to enter the Demised Premises, the Building, the Common Areas, the Property, and the other leasable areas on the Property, and the right to allow third parties to enter the same, at any time without notice in the event of an emergency, including, without limitation, fire, flooding, vandalism, and other exigent situations.

9/30/2021

DocuSign Envelope ID: 21C2E061-2B0D-43D0-A687-6A124E8B5F66

Tenant has no right to an abatement of Rent, nor any claim against Landlord for any entry, inconvenience, or disturbance resulting from activities permitted under this Section. Additionally, neither Landlord nor any third party permitted entry under this Section shall be liable for any damage caused to the Demised Premises or Tenant's property resulting from activities permitted under this Section.

**8.2** <u>Roof Access</u>. Use and access of the roof above the Demised Premises is reserved to Landlord.

**8.3** <u>Other Landlord Rights</u>. In addition to other rights conferred by this agreement or by law, Landlord reserves the right, to be exercised in Landlord's sole discretion, to change the name of the project, the Building, or the Property; install and maintain a sign or signs on the exterior or interior of the Building; change the street address of the Building; designate all sources furnishing signs, sign painting and lettering; take all measures as may be necessary or desirable for the safety and protection of the Demised Premises, the Building, the project, or the Property; have pass keys to the Building; repair, alter, add to, improve, build additional stories on or build adjacent to the Building; close any skylights or windows; run necessary pipes, conduits and ducts through the Demised Premises; renovate, refurbish, relocate or modify the common areas; and carry on any work, repairs, alterations or improvements in, on or about the building or in the vicinity thereof. Tenant hereby waives any claim to damages or inconvenience caused by Landlord's exercise of any such rights. This paragraph shall not be construed to alter or create any obligations of Landlord or Tenant with respect to repairs or improvements or other obligations provided herein.

## ARTICLE IX.  Signs

**9.1** <u>Signs in General</u>. Tenant shall be granted signage rights. All signage must observe all city or local municipality ordnances, and all signage must be approved by Landlord in writing prior to the installation of any exterior signage. Tenant shall not, without Landlord's prior written consent; (a) make any changes to or paint the exterior of the Demised Premises, the exterior of the Building, or the Premises; or (b) install any exterior lighting, decorations, or paintings; or (c) erect or install any window or door lettering, placards, decorations, awnings, canopies, or advertising media of any type which can be viewed from the exterior of the Demised Premises, the exterior of the Building, or the Property. Tenant shall maintain in good condition and repair any installation or modification approved pursuant to this Section. Additionally, any approved installations or modification shall comply with all applicable laws, conform in all respects to the rules and regulations established by Landlord, and be consistent with the general design of the Building and Property.

## ARTICLE X.  Utilities

**10.1** <u>Utilities in General</u>. Landlord agrees to cause to be provided and maintained the necessary mains, conduits and other facilities necessary to supply water, electricity, telephone service and sewerage service to the building in which the Demised Premises is located.

16

9/30/2021

**10.2**    Landlord Utility Option. Tenant shall promptly pay all charges for electricity, water, gas, telephone service, sewerage service and other utilities furnished to the Demised Premises and shall promptly pay any maintenance charges therefor. Landlord may, if it so elects, furnish one or more utility services to Tenant, and in such event Tenant shall purchase the use of such services as are tendered by Landlord and shall pay on demand as additional rental the rates established therefore by Landlord, which rates shall not exceed the rates which would be charged for the same services if furnished directly by the local public utility companies. Landlord may at any time discontinue furnishing any such service without obligation to Tenant other than to connect the Demised Premises to the public utility, if any, furnishing such service.

**10.3**    Limitation of Liability. Landlord shall not be liable for any interruption or failure whatsoever in utility services to the Demised Premises from whatever cause.

**ARTICLE XI.  Indemnification; Public Liability Insurance
and Fire and Extended Coverage Insurance**

**11.1**    Limitation of Liability; Indemnification. Landlord shall not be liable to Tenant or Tenant's employees, agents or visitors, or to any other person or entity whomsoever for any injury to person or damage to or loss of property on or about the Demised Premises, the Common Area, the Building, or the Property caused by the negligence or misconduct of Tenant, its employees, subtenants, licensees or concessionaires, or any other person entering the Property under the express or implied invitation of Tenant, or arising out of the use of the Demised Premises, the Common Area, the Building, or the Property by Tenant and the conduct of its business therein, or arising out of any breach or default by Tenant in the performance of its obligations hereunder or resulting from any other cause except Landlord's gross negligence or intentional misconduct, and Tenant hereby agrees to indemnify Landlord and hold it harmless from any loss, expense or claims arising out of such damage or injury.

**11.2**    Tenant's Insurance Obligation in General. Tenant shall procure and maintain throughout the term of this Lease a policy or policies of insurance, at its sole cost and expense, insuring Tenant and both Landlord and Landlord's managing agent for the property against all claims, demands or actions arising out of or in connection with Tenant's use or occupancy of the Demised Premises, the Common Areas, the Building, or the Property; or by the condition of the Demised Premises; or the action of third parties upon the Demised Premises, the Common Areas, the Building, or the Property; the limits of such policy or policies to be in an amount not less than $1,000,000 in respect of injuries to or death of any one person, and in an amount not less than $1,000,000 in respect to any one accident or disaster, and in an amount not less than $100,000 in respect of property damaged or destroyed. Tenant shall also procure and maintain throughout the term of this Lease a policy or policies of insurance, at its sole cost and expense, insuring against products liability, business interruptions, vandalism and malicious mischief. All such insurance shall be written by insurance companies authorized to issue such insurance coverage in the State of Utah. Tenant's insurer and the contents of Tenant's insurance policy or policies shall in each instance be subject to Landlord's reasonable approval. Tenant shall obtain a written obligation on the part of each insurance company

17

to notify Landlord at least ten (10) days prior to cancellation of such insurance. Duplicate original copies of such policies or duly executed certificates of insurance shall be promptly delivered to Landlord and renewals thereof as required shall be delivered to Landlord at least thirty (30) days prior to the expiration of the respective policy terms. Tenant's failure to comply with the foregoing requirements relating to insurance shall constitute an event of default hereunder. In addition the remedies provided in Article XVII of this Lease, Landlord may, but is not obligated to, obtain such insurance as it deems appropriate in its sole and absolute discretion, and Tenant shall pay to Landlord upon demand, as additional rent, the premium cost thereof plus an administrative cost of ten percent (10%), plus interest at the rate of twelve percent (12%) per annum from the date of payment by Landlord until repaid by Tenant.

**11.3** <u>Mutual Liability Waiver</u>. Landlord and Tenant agree and covenant that neither shall be liable to the other for loss arising out of damage to or destruction of the Demised Premises or contents thereof when such loss is caused by any perils including within standard fire and extended coverage insurance policy of the state of which the Demised Premises is situated, provided payment is made on the insurance claim for such loss. This waiver of liability to the extent of insurance coverage shall be binding whether or not such damage or destruction be caused by negligence of either party or their agents, employees or visitors.

**11.4** <u>Insurance Payment</u>. Tenant agrees to pay, as additional rent during the term of this Lease, its proportionate share of Landlord's costs of carrying special risk or its equivalent insurance, liability insurance, or any other insurance covering the property or any portion thereof (collectively, the "**Insurance**"). During each month during the term of this Lease, Tenant shall make to Landlord, a monthly payment (the "**Insurance Payment**") equal to Tenant's proportionate share of the cost of the Insurance which will be due and payable for that particular year. Tenant authorizes Landlord to use the funds paid under this Article to pay for the cost of such insurance. Each such Insurance Payment shall be due and payable at the same time and in the same manner as the payment of Minimum Base Rent as provided herein. The amount of the initial monthly Insurance Payment will be included in the NNN charge amount set out in Article I, Section 1.1(j). The initial monthly Insurance Payment is based upon Tenant's proportionate share of the estimated cost of Insurance for the year of the execution of this Lease, and such monthly Insurance Payment is subject to increase or decrease as determined by Landlord to reflect an accurate monthly payment of Tenant's estimated proportionate share of the cost of Tenant's Insurance. Tenant's Insurance Payment shall be reconciled annually. If Tenant's total annual Insurance Payments are less than Tenant's actual pro rata share of the Insurance costs, Tenant shall pay to Landlord upon demand the difference. If the total annual Insurance Payments are more than Tenant's actual pro rata share of the Insurance costs, Landlord shall retain such excess and credit it to future Insurance Payments due from Tenant. Tenant's proportionate share of the cost of Insurance shall be computed by multiplying the cost of Insurance by a fraction, the numerator of which shall be the number of square feet of floor space in the Demised Premises and the denominator of which shall be the number of gross leasable square feet in the property.

## **ARTICLE XII. Non-Liability for Certain Damages**

18

**12.1**    <u>Indemnification and Liability Limitation for Certain Damages</u>. Landlord and Landlord's agents and employees shall not be liable to Tenant or any other person or entity whomsoever for any injury to person or damage to property caused by the Demised Premises, the Building, the Common Areas, or other portions of the Property becoming out of repair or by defect in or failure of equipment, pipes or wiring, or broken glass or by the backing up of drains, or by gas, water, steam, electricity or oil leaking, escaping or flowing into the Demised Premises, the Building, the Common Areas, or other portions of the Property, except for those caused by the gross negligence or intentional misconduct of the Landlord, Landlord's employees, or Landlord's agents, nor shall Landlord be liable to Tenant or any other person or entity whomsoever for any loss or damage that may be occasioned by or through the acts or omissions of Tenant, other tenants of the Property, or of any other persons or entities whomsoever. Tenant shall indemnify and hold Landlord harmless from any loss, cost, expense or claims arising out of such injury or damage referred to in this Article XII, Section 12.1.

**ARTICLE XIII. Damages by Casualty**

**13.1**    <u>Written Notice of Damages</u>. Tenant shall give immediate written notice to Landlord of any damage caused to the Demised Premises by fire, flooding, or other casualty.

**13.2**    <u>Damage or Destruction of the Demised Premises in General</u>. In the event that the Demised Premises shall be damaged or destroyed by fire or other casualty insurable under the standard fire and extended coverage insurance, and Landlord does not elect to terminate this Lease as hereinafter provided, Landlord shall proceed with reasonable diligence and at its sole cost and expense to rebuild and repair the Demised Premises, subject to the provisions of Section 13.3 of this Article. If the Building in which the Demised Premises are located shall (i) be destroyed or substantially damaged by a casualty not covered by Landlord's insurance; or (ii) be destroyed or rendered untenantable to an extent in excess of fifty percent (50%) of the first floor area by a casualty covered by Landlord's insurance; or (iii) be damaged to such extent that the remaining term of this Lease is not sufficient to amortize the cost of reconstruction, then Landlord may elect either to terminate this Lease as hereinafter provided or to proceed to rebuild and repair the Demised Premises, subject to the provisions of Section 13.3 of this Article. Should Landlord elect to terminate this Lease, Landlord shall give written notice of such election to Tenant within ninety (90) days after the occurrence of such casualty. If Landlord should not elect to terminate this Lease, Landlord shall proceed with reasonable diligence and at its sole cost and expense to rebuild and repair the Demised Premises, subject to Section 13.3 of this Lease. If a casualty shall render the Demised Premises untenantable, in whole or in part, a proportionate abatement of the Minimum Base Rent in proportion to the leasable area of the Demised Premises rendered untenantable shall be allowed until the date Landlord completes the repairs or rebuilding of the demised Premises.

**13.3**    <u>Limitations of any Obligation to Restore</u>. Landlord's obligation to rebuild and repair under this Article XIII shall in any event be limited to restoring the Demised Premises to substantially the condition in which the same existed prior to the casualty, and shall be further limited to the extent of the insurance proceeds available to Landlord for such restoration.

19

DocuSign Envelope ID: 21C2E061-2B9D-43D0-A687-6A124E8B5F56

**13.4** Operation of the Demised Premises. Except as otherwise provided in section 13.2, Tenant agrees that during any period of reconstruction or repair of the Demised Premises it will continue the operation of its business within the Demised Premises to the extent practicable.

## ARTICLE XIV.  Eminent Domain

**14.1** Total Taking. In the event all of the Demised Premises should be taken for any public or quasi-public use under any governmental law, ordinance or regulation or by right of eminent domain or by private purchase in lieu thereof, this Lease shall terminate and the rent shall be abated during the unexpired portion of this Lease, effective on the date physical possession is taken by the condemning authority.

**14.2** Partial Taking. In the event part, but not all, of the Demised Premises should be taken as aforesaid, this Lease shall not terminate; however, the Minimum Base Rent payable hereunder during the unexpired portion of this Lease shall be reduced in proportion to the area taken, effective on the date physical possession is taken by the condemning authority.  Following such partial taking, Landlord shall make all necessary repairs or alterations necessary to make the Demised Premises an architectural whole.

**14.3** Taking of Common Area. If any part of the Common Area shall be taken as aforesaid, this Lease shall not terminate, nor shall the rental payable hereunder be reduced, except that Landlord may, in its sole discretion, terminate this Lease if the area of the Common Area remaining following such taking plus any additional parking area provided by Landlord in reasonable proximity to the Property shall be less than seventy percent (70%) of the area of the Common Area immediately prior to the taking.

**14.4** Compensation for Takings. All compensation awarded for any taking (or the proceeds of private sale in lieu thereof) of the Demised Premises or Common Area shall be the property of Landlord, and Tenant hereby assigns its interest in any such award to Landlord; provided, however, Landlord shall have no interest in any award made to Tenant for the taking of Tenant's personal property if a separate award for such items is made to Tenant.

## ARTICLE XV.  Assignment and Subletting

**15.1** Assignments and Subletting in General. Tenant shall not assign or in any manner transfer this Lease or any estate or interest therein, or sublet the Demised Premises or any part thereof, or grant any license, concession or other right to occupy any portion of the Demised Premises without the prior written consent of Landlord, not to be unreasonably withheld.  Consent by Landlord to one or more assignments or sublettings shall not operate as a waiver of Landlord's rights as to any subsequent assignments and sublettings.  Notwithstanding any assignment or subletting, Tenant and

20

DocuSign Envelope ID: 21C2E061-2B0D-43D0-A697-6A124E8B5F56

any guarantor of Tenant's obligations under this Lease shall at all times remain fully responsible and liable for the payment of the rental herein specified and for compliance with all of Tenant's other obligations under this Lease.

**15.2**   Transfer or Assignment by Landlord. In the event of the transfer and assignment by Landlord of this interest in this Lease, the Building, or the Property to a person expressly assuming Landlord's obligations under this Lease, Landlord shall thereby be released from any further obligations thereunder, and Tenant agrees to look solely to such successor in interest of the Landlord for performance of such obligations. Any Security Deposit or other security given by Tenant to secure performance of Tenant's obligations hereunder may be assigned and transferred by Landlord to such successor in interest, and Landlord shall thereby be discharged of any further obligation relating thereto.

**15.3**   Tenant Encumbrances Prohibited. Tenant shall not mortgage, pledge or otherwise encumber its interest in this Lease or in the Demised Premises.

**15.4**   Landlord's Consent. Landlord's consent to assignment and subletting which is required under Article XV, Section 15.1 of this Lease may be withheld or delayed by Landlord in its discretion, but may not be unreasonably withheld or delayed. Tenant agrees to promptly provide Landlord with such information, as Landlord may deem reasonable or necessary in its sole discretion, regarding such proposed assignee or subtenant and regarding any proposed alterations of the Demised Premises which will be required in connection with such assignment or subletting. In no event shall any sublease or assignment be made or allowed which would in any way violate any then exclusive use provisions granted to or any other tenants or occupants of the Property. Any assignment or sublease shall comply with all applicable laws. In the event that Landlord consents to any such assignment or subletting, such successor shall assume in writing, in a form reasonably satisfactory to Landlord, all of Tenant's obligations hereunder.

**15.5**   Other Assignment Terms. Any subtenant or assignee of Tenant shall be required to pay all sums due from such subtenant or assignee directly to Landlord. In addition, Landlord reserves the right to retain any excess rental or other consideration paid by any assignee or sublessee of Tenant over the Minimum Base Rent required from Tenant under the terms of this Lease. Any acceptance of rent by Landlord from an unauthorized assignee or sublessee of Tenant, or Landlord permitting such unauthorized assignee or sublessee to remain in possession of the Demised Premises for any length of time, shall not be deemed consent by Landlord to any such assignment or sublessee or waiver of any breach of the provisions of this Lease by Tenant.

**15.6**   Tenant Capital Transfer. The sale, issuance or transfer of a majority of the voting capital stock of Tenant (if Tenant be a non-public corporation) shall be deemed to be an assignment of this Lease within the meaning of this Article.

## ARTICLE XVI.  Property Taxes

21

9/30/2021

**16.1**   <u>Tenant Tax Obligation in General</u>. Tenant shall be liable for all taxes levied against personal property and trade fixtures placed by Tenant in or about the Demised Premises, the Building, or the Property. If any such taxes are levied against Landlord or Landlord's property and if Landlord elects to pay the same, or if the assessed value of Landlord's property is increased by inclusion of personal property and trade fixtures placed by Tenant in or about the Demised Premises, the Building, or the Property, and Landlord elects to pay the taxes based on such increase, Tenant shall pay to Landlord upon demand that part of such taxes for which Tenant is primarily liable hereunder.

**16.2**   <u>Tenant Tax Obligation Continued</u>. Tenant agrees to pay:

(a)   As additional rent during the term of this Lease, its proportionate share of "**Taxes**" (as hereinafter defined).  For purposes hereof, the term "**Taxes**" shall include all real estate taxes, assessments for public improvements, water and sewer charges (except for such water and sewer charges which are measured by the consumption of the actual user of the item or service for which such charge is made) and all other governmental levies, surcharges and charges of every kind and nature whatsoever, general and special, extraordinary as well as ordinary, foreseen and unforeseen, and each and every installment thereof, which shall during the term of this Lease be levied, assessed or imposed upon the land, buildings or other improvements composing the property or any portion thereof, including interest on such installment payments and all reasonable costs, expenses and attorneys', accountants', consultants', and appraisers' fees incurred by Landlord in contesting such taxes or in negotiating with the taxing authorities with respect to the same.  During each month of the term of this Lease, Tenant shall pay to Landlord a monthly payment (the "**Tax Payment**") equal to the Tenant's proportionate share of the Taxes which will be due and payable for that particular year. Tenant authorizes Landlord to use the funds paid under this Article to pay the Taxes.  Each such monthly Tax Payment shall be due and payable at the same time and manner as the payment of Minimum Base Rent. The amount of the initial monthly Tax Payment will be included in the NNN charge amount set out in Article I, Section 1.1(j).  The initial Tax Payment is based upon Tenant's proportionate share of the estimated amount of Taxes for the year of the execution of this Lease, and such monthly Tax Payment is subject to increase or decrease as determined by Landlord to reflect an accurate monthly payment of Tenant's estimated proportionate share of the Taxes.  Tenant's Tax Payment shall be reconciled annually.  If Tenant's total annual Tax Payments are less than Tenant's actual pro rata share of the Taxes, Tenant shall pay to Landlord upon demand the difference.  If the total annual Tax Payments are more than Tenant's actual pro rata share of the Taxes, Landlord shall retain such excess and credit it to future Tax Payments due from Tenant.  Tenant's proportionate share of the Taxes shall be computed by multiplying the Taxes by a fraction, the numerator of which shall be the number of square feet of floor area in the Demised Premises and the denominator of which shall be the number of gross leasable square feet of the Demised Premises and such other portions of the Property which are so assessed with the Demised Premises.  For any tax year during which this Lease is not in effect for the entire tax year, the proportionate share of Taxes payable by Tenant hereunder shall be prorated on a daily basis based on the number of days in such tax year that this Lease is in effect.

22

(b)      Tenant shall also be liable for and shall pay on or before when due all taxes, assessments, impositions or charges levied on or with respect to or based on the rents payable under this Lease and Tenant shall provide Landlord with copies of receipts evidencing payment of all such rent and taxes; provided, however, that Tenant shall not be responsible for any inheritance, estate, succession, transfer, gift, franchise, corporation, income or profit tax that is or may be imposed upon Landlord.  In addition, Tenant shall be liable for and shall pay on or before when due all taxes levied against personal property and fixtures placed by Tenant in the Demised Premises, the Building, or the Property.

(c)      Tenant may, alone or along with any other tenants of the Property, at its or their sole cost and expense and in its or their own name(s), dispute and contest any "Taxes" by appropriate proceedings diligently conducted in good faith, but only after Tenant and all other tenants, if any, joining with Tenant in such contest have deposited with Landlord the amount so contested and unpaid, or their proportionate shares thereof as the case may be, which shall be held by Landlord without obligation for interest until the termination of the proceedings, at which time the amount(s) deposited shall be applied by Landlord toward the payment of the items held valid (plus any court costs, interest, penalties and other liabilities associated with the proceedings), and Tenant's share of any excess deposit shall be returned to Tenant.  Tenant further agrees to pay to Landlord upon demand Tenant's share (as among all tenants who participated in the contest) of all court costs, interest, penalties and other liabilities relating to such proceedings.  Tenant hereby indemnifies and agrees to hold harmless the Landlord from and against any cost, damage or expense (including attorneys' fees) in connection with any such proceedings.

**16.3.**    <u>Tenant's Failure to Pay Taxes</u>. If Tenant should fail to pay any taxes, assessments, or governmental charges required to be paid by Tenant hereunder, then in addition to any other remedies provided herein, Landlord may, if it so elects, pay such taxes, assessments, and governmental charges. Any sums so paid by Landlord shall accrue interest from the date of payment by Landlord until repaid by Tenant, with such interest to be at the lesser of (i) the maximum legal rate allowed by law, or (ii) ten percent (10%) per annum, and such sums so paid by Landlord, together with such interest accrued thereon, shall be due and payable on demand and shall be deemed to be additional rental due hereunder.

## <u>ARTICLE XVII.  Default by Tenant and Remedies</u>

**17.**1    <u>Mediation and Arbitration</u>. As set forth in Sections 23.10 and 23.11 below, Tenant and Landlord agree to use mediation and binding arbitration to solve all disputes, issues, and conflicts that arise between them, with the exception of those disputes, issues, or conflicts that involve (a) a nonpayment of rent or additional rent owed under this Lease (including, without limitation, Minimum Base Rent, Common Area Maintenance Charge, Insurance Payment, Tax Payment, or Security Deposit), (b) an eviction, unlawful detainer, abandonment, or other similar action, or (c) a matter where immediate injunctive relief is reasonably required.  A party may seek relief from a court of competent jurisdiction on each of the exceptions identified in the preceding sentence.

23

9/30/2021

**17.2** <u>Events of Default by Tenant</u>. In addition to the other events of default identified in this Lease, each of the following events shall be deemed to be events of default by Tenant under this Lease:

**(a)** Tenant shall fail to pay when due any installment of rent, additional rent, or any other sums required to be paid by Landlord as herein provided.

**(b)** Tenant shall fail to occupy the Demised Premises within thirty (30) days of written notice by Landlord that the Demised Premises are substantially completed in accordance with this Lease.

**(c)** Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of rent or expenses demanded by the Landlord, and shall not cure such failure within ten (10) days after written notice thereof to Tenant; provided that if the appropriate cure should reasonably require more than ten (10) days, then Tenant shall have a reasonable period of time to complete said cure, so long as Tenant commences the cure within said ten-day period and proceeds diligently to completion of same.

**(d)** Tenant or any guarantor of Tenant's obligations under this Lease shall become insolvent, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

**(e)** Tenant or any guarantor of Tenant's obligations under this Lease shall file a petition under any section or chapter of the National Bankruptcy Act, as amended, or under any similar law or statue of the United States or any State thereof; or Tenant or any guarantor of Tenant's obligations under this Lease shall be adjudged bankrupt or insolvent in proceedings filed against Tenant or any guarantor of Tenant's obligations under this Lease.

**(f)** A receiver or Trustee shall be appointed for Tenant's interest in the Demised Premises or for all or substantially all of the assets of Tenant or any guarantor of Tenant's obligations under this Lease.

**(g)** Tenant shall do or permit to be done anything which creates a lien upon the Demised Premises.

**(h)** The business operated by Tenant in the Demised Premises shall be closed by governmental or court order for failure to pay any State sales tax as required or for any other reason.

**(i)** Tenant shall not vacate or abandon the Demised Premises at any time prior to the expiration or earlier termination of the term hereof, nor permit the Demised Premises to remain unoccupied for a period longer than five (5) consecutive business days, nor cease normal business operations at the Demised Premises for five (5) business days out of any given thirty-day period. In the event Tenant shall abandon, vacate or surrender the Premises or be dispossessed by process of

24

DocuSign Envelope ID: 21C2E061-2B0D-43D0-A687-6A124E8B5F66

law or otherwise, any personal property belonging to Tenant and left on the Demised Premises shall be deemed to have been abandoned. If the Tenant abandons or vacates the Demised Premises prior to the expiration of original lease Term or extension period of the Lease, the Landlord may reenter the Demised Premises and secure the space. Landlord may alter all locks and other security devices at the Demised Premises without terminating this Lease. Tenant's abandonment and Landlord's reentry of the Demised Premises will not constitute settlement and all the Landlord's legal rights to recovery will remain intact under Tenant's default.

**17.3** <u>Landlord Remedies</u>. Upon the occurrence of any of the foregoing events of default by Tenant, Landlord shall have the option to pursue any one or more of the remedies set forth in this Section without any further notice of demand whatsoever. Such remedies shall be in addition to, and not in replacement of, any other remedies that may be available under law, in equity, or under this Lease.

**(a)** Terminate this Lease, in which event Tenant shall immediately surrender the Demised Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages rental, enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person who may be occupying said premises or any part thereof, without being liable for prosecution or any claim of damages therefore.

**(b)** Enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person who may be occupying said premises or any part thereof, without being liable for prosecution or any claim for damages therefore, with or without having terminated this Lease. Tenant shall remain liable for any and all Monthly Payments, rent and other charges hereunder.

**(c)** Enter upon the Demised Premises without being liable for prosecution or any claim for damages therefore, and do whatever Tenant is obligated to do under the terms of this Lease, and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for any damages resulting to Tenant from such action. Any sums so paid by Landlord shall accrue interest from the date of payment by Landlord until repaid by Tenant, with such interest to be at the maximum legal rate allowed by law, and such sums so paid by Landlord, together with accrued interest thereon, shall be due payable upon demand and shall be deemed to be additional rental due hereunder.

**(d)** Alter all locks and other security devices at the Demised Premises without terminating this Lease.

**(e)** Bring suit for the collection of rents or any damages resulting from Tenant's default without entering into possession of the Demised Premises or voiding this Lease.

25

9/30/2021

**17.4**  _Landlord's Exercise of Remedy_. Exercise by Landlord of any one or more remedies hereunder granted or otherwise available shall not be deemed to be an acceptance of surrender of the Demised Premises by Tenant whether by agreement or by operation of law, it being understood that such surrender can be effected only by the written agreement of Landlord and Tenant. No alteration of locks or other security devices and no removal or other exercise of dominion by Landlord over the property of Tenant or others at the Demised Premises shall be deemed unauthorized or constitute a conversion, Tenant hereby consenting, after any event of default, to the aforesaid exercise of dominion over Tenant's property within the Demised Premises. All claims for damages by reason of such re-entry and/or repossession and/or alteration of locks or other security devices are hereby waived, as are all claims for damages by reason of any distress warrant, forcible detainer proceedings, sequestration proceedings or other legal process. Tenant agrees that any re-entry by Landlord may be pursuant to judgment obtained in forcible detainer proceedings or other legal proceedings as Landlord may elect, and Landlord shall not be liable in trespass or otherwise.

**17.5**  _Remedy of Termination_. In the event Landlord elects to terminate this Lease by reason of an event of default, then notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord the sum of all rental and other indebtedness accrued to date of such termination plus, as damages, an amount equal to the difference between (i) the total Minimum Base Rent, plus Tenant's Common Area Maintenance Charge, Insurance Payment, Tax Payment, and other obligations hereunder for remaining portion of the Lease Term (had such term not been terminated by Landlord prior to the date of expiration stated in Article I) and (ii) the then present value of the then fair market rental value of the Demised Premises for such period.

**17.6**  _Remedy of Repossession_. In the event that Landlord elects to repossess the Demised Premises without terminating this Lease, then Tenant shall be liable for and shall pay to Landlord all rental and other indebtedness accrued to the date of such repossession, plus Landlord may accelerate to the date of default all Monthly Payments required to be paid by Tenant to Landlord during the remainder of the Lease Term as stated in Article I. Said amount may be calculated by the approximation of historical costs of said amount to the remainder of the Lease. That amount may be offset by any actual net sums thereafter received by Landlord through reletting the Demised Premises during said period (after deducting expenses incurred by Landlord). In no event shall Tenant be entitled to any excess of any rent obtained by reletting over and above the rental herein reserved. Actions to collect amounts due by Tenant to Landlord as provided in this Section may be brought from time to time, on one or more occasions, without the necessity of Landlord's waiting until expiration of the Lease Term.

**17.7**  _Additional Damages for Default_. In case of any event of default or breach by Tenant, Tenant shall also be liable for and shall pay to Landlord, in addition to any sum provided to be paid above, brokers' fees incurred by Landlord in connection with reletting the whole or any part of the Demised Premises; the costs of removing and storing Tenant's or other occupant's property; the costs of repairing, altering, remodeling or otherwise putting the Demised Premises into condition acceptable to a new tenant or tenants; and all reasonable expenses incurred by Landlord in enforcing

or defending Landlord's rights and/or remedies, including reasonable attorneys' fees (at all tribunals, before and during trial and on appeal).

**17.8** <u>Landlord's Right to Relet</u>. In the event of termination or repossession of the Demised Premises for an event of default, Landlord shall attempt to relet the Demised Premises, or any portion thereof, to collect rental after reletting; and in the event of reletting, Landlord may relet the whole or any portion of the Demised Premises, as agent for Tenant or for Landlord's own account, for any period to any tenant and for any use and purpose. Landlord shall owe no duty or obligation to Tenant if Landlord attempts to relet the Demised Premises or attempts in any way to mitigate Landlord's damages in the event of termination or repossession of the Demised Premises for an event of default.

**17.9** <u>Landlord's Option to Remedy Tenant Breaches</u>. If Tenant should fail to make any payment as due or cure any default hereunder within the time herein permitted, Landlord without being under any obligation to do so and without thereby waiving such default, may make such payment and/or remedy such other default for the account of Tenant (and enter the Demised Premises for such purpose), and hereupon Tenant shall be obligated to, and hereby agrees, to pay Landlord, upon demand, all costs, expenses and disbursements (including reasonable attorneys' fees at all tribunals, including appeals) incurred by Landlord in taking such remedial action. All rental amounts and any other charges and expenses to be paid by Tenant to Landlord hereunder which are not paid when due shall bear interest at the maximum interest rate then allowable under the laws of the State of Utah and such interest charge shall accrue from the date payment is due until the date paid.

**17.10** <u>Security Deposit in General</u>. Upon receipt from Tenant of the sum stated in Article I, Section 1.1(m) above (the "**Security Deposit**"), such sum shall be held by Landlord without interest as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that such deposit is not an advance payment of rental or a measure of Landlord's damages in case of default by Tenant. Said deposit shall be held by Landlord without payment of interest, as security for the faithful performance by Tenant of all of the terms, covenants and conditions of this Lease by Tenant to be kept and performed during the terms hereof. If at any time during the term of this Lease, any of the rental herein reserved shall be overdue and unpaid, then Landlord may, at the option of Landlord (but Landlord shall not be required to) appropriate and apply any portion of the Security Deposit to the payment of any such overdue rental or other sum. In the event of the failure of Tenant to keep and perform any of the terms, covenants and conditions of this Lease to be kept and performed by Tenant, then Landlord at its option may appropriate and apply the Security Deposit, or so much thereof as may be necessary, to compensate the Landlord for loss or damage sustained or suffered by Landlord due to such breach on the part of Tenant. Should the Security Deposit, or any portion thereof, be appropriated and applied by Landlord for the payment of overdue rental or other sums due and payable to Landlord by Tenant hereunder, then Tenant shall, upon the written demand of Landlord, forthwith remit to Landlord a sufficient amount in cash to restore the Security Deposit to the original sum deposited, and Tenant's failure to do so within five (5) days after receipt of such demand shall constitute an event of default under this Lease. Should Tenant comply with all of the terms, covenants and conditions of this Lease and promptly pay all of the rental herein provided for as it falls due and all other sums payable by Tenant to Landlord

hereunder, the Security Deposit (less any sums incurred or expended by Landlord in cleaning and restoring the Demised Premises) shall be returned to Tenant at the end of the Lease Term or upon the earlier termination of this Lease.

**17.11** <u>Landlord's Right to Cure</u>. Tenant shall not have any remedy against Landlord, nor shall Tenant be entitled to demand mediation, arbitration, or other relief under this Lease, unless and until Tenant has complied fully with the requirements of this Section, in addition to any other applicable obligations or requirements under the Lease. In the event of a failure by Landlord to perform a material Term, condition, covenant or obligation of this Lease, Tenant shall give Landlord written notice of the same. Such notice shall describe the alleged failure in detail and identify this Section. Landlord shall have thirty (30) days from its receipt of such notice to reasonably cure the alleged failure, unless the alleged failure cannot be reasonably cured within such thirty (30) day period, in which case Landlord shall have a reasonable time to cure the alleged failure. At the conclusion of the cure period described in the preceding sentence, if the alleged failure has not been reasonably cured, Tenant may exercise the rights available to it under this Lease.

**17.12** <u>Tenant's Property Upon Tenant's Breach</u>. In the event that Landlord shall have taken possession of the Demised Premises pursuant to the authority herein granted, then Landlord shall have the right to keep in place and use all of the furniture, fixtures and equipment at the Demised Premises, the Building, or the Property, including that which is owned by or leased to Tenant, at all times prior to any foreclosure thereon by Landlord or repossession thereof or third party having a lien thereon. Landlord shall also have the right to remove from the Demised Premises, the Building, or the Property (without the necessity of obtaining a distress warrant, writ of sequestration or other legal process) all or any portion of such furniture, fixtures, equipment and other property located thereon and place same in storage at any premises within the County in which the Demised Premises is located; and in such event, Tenant shall be liable to Landlord for costs incurred by Landlord in connection with such removal and storage and shall indemnify and hold Landlord harmless from all loss, damage, cost, expense and liability in connection with such removal and storage. Landlord shall also have the right to relinquish possession of all or any portion of such furniture, fixtures, equipment and other property to any person ("**Claimant**") claiming to be entitled to possession thereof who presents to Landlord a copy of any instrument represented to Landlord by Claimant to have been executed by Tenant (or any predecessor of Tenant) granting Claimant the right under various circumstances to take possession of such furniture, fixtures, equipment or other property, without the necessity on the part of Landlord to inquire into the authenticity of said instrument's copy of Tenant's or Tenant's predecessor's signature thereon and without the necessity of Landlord's making any nature of investigation or inquiry as to the validity of the factual or legal basis upon which Claimant purports to act. Tenant agrees to indemnify and hold Landlord harmless from all cost, expense, loss, damage and liability incident to Landlord's relinquishment of possession of all or any portion of such furniture, fixtures, equipment or other property to Claimant. The rights of Landlord herein stated shall be in addition to any and all other rights which Landlord has or may hereafter have at law or in equity, and Tenant stipulates and agrees that the rights herein granted Landlord are commercially reasonable. Landlord shall in no

9/30/2021

event be liable to Tenant, including without limitation, liability for trespass or conversion, with respect to any actions taken pursuant to this Section 17.12.

### ARTICLE XVIII.  Landlord's Lien

**18.1**    Landlord's Lien in General. To secure the payment of all rent and other sums of money due and to become due hereunder and the faithful performance of this Lease by Tenant, Tenant hereby gives to Landlord an express first and prior contract lien and security interest on all property now or hereafter acquired, (including fixtures and equipment) but specifically excluding all proceeds of any insurance which may accrue to Tenant by reason of destruction of or damage to any such property.  Such property shall not be removed therefrom without the written consent of Landlord until all arrearages in rent and other sums of money then due to Landlord hereunder shall be paid.  Upon the occurrence of an event of default, this lien may be foreclosed with or without court proceedings by public or private sale, provided Landlord gives Tenant at least fifteen (15) days' notice of the time and place of said sale, and Landlord shall have the right to become the purchaser, upon being the highest bidder at such sale.  Contemporaneous with the execution of this Lease (and if requested hereafter by Landlord), Tenant shall execute and deliver to Landlord Uniform Commercial Code financing statements in sufficient form so that when properly filed, the security interest hereby given shall thereupon be perfected.  If requested hereafter by Landlord, Tenant shall also execute and deliver to Landlord Uniform Commercial Code financing statement change instruments in sufficient form to reflect any proper amendment or modification in or extension of the aforesaid contract lien and security interest hereby granted.  Landlord shall, in addition to all of its rights hereunder, also have all of the rights and remedies of a secured party under the Uniform Commercial Code as adopted in the State in which the Demised Premises are located.  To the extent permitted by law, this Lease shall constitute a security agreement under Article 9 of the Uniform Commercial Code.  Tenant shall deliver to Landlord at least annually, a complete list of all equipment, fixtures, furniture, office items and other goods held in the Demised Premises.  Tenant agrees Landlord may file this Agreement or a separate financing as it deems necessary to perfect this security interest.

### ARTICLE XIX.  Holding Over

**19.1**    Holding Over in General. In the event Tenant remains in possession of the Demised Premises after the expiration of this Lease and without the execution of a new lease or any extension or renewal hereof, Landlord reserves the right to declare this Lease renewed under the terms and conditions of this Lease for a term set by Landlord in its sole discretion.  In the alternative, Landlord may demand of Tenant for every month Tenant remains in possession one hundred fifty percent (150%) of the greater (i) the then market rental rate for the Demised Premises or (ii) the Minimum Base Rent paid by Tenant under the terms of this Lease immediately prior to the expiration hereof, with resulting tenancy constituting a tenancy at sufferance.  In the event that Tenant executes a new lease within sixty (60) days after the expiration of the term of this Lease, then Tenant's occupancy of the Demised Premises during such sixty (60) day period shall be governed by the terms and provisions of said new Lease.

9/30/2021

## ARTICLE XX.  Subordination and Park Covenants

**20.1**    Subordination in General. Tenant accepts this Lease subject and subordinate to any mortgage, ground lease or other lien presently existing or hereafter created upon the Demised Premises, the Building, or the Property, and to any renewals and extensions thereof, but Tenant agrees that any mortgagee, ground lessor or other lien or shall have the right at any time to subordinate this Lease to any mortgage, ground lease or other lien hereafter placed upon the Demised Premises, the Building, or the Property, and Tenant agrees upon demand to execute such further instruments subordinating this Lease as Landlord may request.  Further, Tenant agrees to attorn to any successor-in-interest of Landlord and to execute an instrument evidencing such agreement upon request by Landlord.  The terms of this Lease are subject to approval by the lender providing the permanent financing for the Property and such approval is a condition precedent to Landlord's obligations hereunder.

**20.2**    Park Covenants in General. If the project is located in, is part of, or subsequent to the date hereof is incorporated into any office park, industrial park, business park or similar entity (the "**Park**"), this Lease shall be subject to all of the terms, covenants, restrictions, development criteria or other such regulations for the Park (the "**Covenants**").  Tenant hereby accepts its leasehold estate subject to such Covenants and agrees to conform and comply with all provisions contained therein or to allow Landlord or other obligor under the Covenants to fulfill all obligations imposed pursuant thereto.  Any failure by Tenant to comply with such Covenants shall constitute a default under this Lease.  Tenant shall pay, as additional rent, its proportionate share of any costs imposed upon the project as a result of the project's association with the Park including, but not limited to, owner's association fees, and maintenance costs and real estate taxes associated with any common areas of the Park.

## ARTICLES XXI.  Notices

**21.1**    Notices in General. Wherever any notice is required or permitted hereunder, such notice shall be in writing.  Any notice of document required or permitted to be delivered hereunder shall be deemed to be delivered (whether actually received or not) when deposited in the United States Mail, postage prepaid, Certified or Registered Mail, Return Receipt Requested, or when transmitted by special courier or express mail service furnishing evidence of delivery, addressed to the parties hereto at the respective addresses set out in Article I, Section 1.1 above, or at such other addresses as they may have hereafter specified by written notice given in accordance with this Section 21.1.

**21.2**    Terms Explained. If and when included within the term "Landlord" as used in this instrument there are more than one person, firm or corporation, all shall jointly arrange among themselves for their joint execution of such notices specifying some individual at some specific address for the receipt of all notices and payments to Landlord.  If and when included within the term "Tenant" as used in this instrument there are more than one person, firm or corporation, all shall jointly arrange among themselves for their joint execution of such notices, specifying some individual at

30

some specific address for the receipt of all notices and payments to Tenant. All parties included within the term "Landlord" and "Tenant" respectively, shall be bound by notices and payments given in accordance with the provisions of this Article, to the same effect as if each had received such notice or payment.

**21.3**    Tenant Representations. Tenant makes the following representations to Landlord on which Landlord is entitled to rely in executing this Lease: (i)  Tenant is a Utah Corporation, duly organized and existing under the laws of the State of Utah, and has the power to enter into this Lease and the transaction contemplated hereby and to perform its obligations hereunder, and by proper resolution the signatory hereto has been duly authorized to execute and deliver this Lease; and (ii) the execution, delivery and performance of this Lease and the consummation of the transactions herein contemplated shall not conflict with or result in the violation of, breach of, or a default under Tenant's articles of incorporation or bylaws or partnership agreements, as amended, or any indenture, mortgage, deed of trust, note, security agreement or other agreement or instrument to which Tenant is a party or by which it is bound or to which any of its properties is subject.

## ARTICLE XXII.  Late Charges

**22.1**    Late Charges in General. In the event Tenant fails to pay the Landlord the Monthly Payment on or before the first of each calendar month, or any other sum to be paid to Landlord which may become due hereunder at the time said sum is due, Landlord will incur additional expenses in an amount not readily ascertainable and which has not been elsewhere provided for between Landlord and Tenant. Therefore, if Tenant should fail to pay Landlord when due any monthly payment or any other sum to be paid hereunder, Tenant will pay Landlord a late charge of fifteen (15%) percent thereof. Failure to pay such late charge upon demand therefore shall be an event of default hereunder. Provision for such late charge shall be in addition to all other rights and remedies available to Landlord hereunder or at law or in equity and shall not be construed as liquidated damages or limiting Landlord's remedies in any manner.

## ARTICLE XXIII.  Miscellaneous

**23.1**    Lease Construction. Nothing herein contained shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of principal and agent or of partnership or of joint venture between parties hereof, it being understood and agreed that neither the method of computation of rent, nor any other provisions contained herein, nor any acts of the parties hereto, shall be deemed to create any relationship between the parties hereto other than the relationship of Landlord and Tenant. Whenever herein the singular number is used, the same shall include the plural, and words of any gender shall include each other gender.

**23.2**    Caption Construction. The captions used herein are for convenience only and do not limit or amplify the provisions hereof.

9/30/2021

**23.3**    No Subsequent Waiver. One or more waivers of any covenant, term or condition of this Lease by Landlord shall not be construed as a waiver of subsequent breach of the same covenant, term or condition. The waiver by Landlord of a breach hereunder shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition. The consent or approval by Landlord to or of any act by Tenant requiring such consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

**23.4**    Force Majeure; Notice to Mortgagee. Whenever a period of time herein prescribed for action to be taken by Landlord, Landlord shall not be liable or responsible for, and there shall be excluded from the computation of any such period of time, any delays due to strikes, riots, acts of God, shortages of labor or materials, war, governmental laws, regulations or restrictions, or any other causes of any kind whatsoever which are beyond the reasonable control of Landlord. At any time when there is outstanding a mortgage, ground Lease or similar security instrument covering Landlord's interest in the Demised Premises, Tenant may not exercise any remedies for default by Landlord hereunder unless and until the holder of the indebtedness secured by such mortgage, ground lease or similar security instrument shall have received written notice of such default and a reasonable time for curing such default shall thereafter have elapsed.  Except as otherwise provided, time shall be of the essence of this Lease.

**23.5**    Quiet Enjoyment. Landlord agrees that if Tenant shall perform all of the covenants and agreements herein required to be performed by Tenant, Tenant shall, subject to the terms of this Lease, at all times during the continuance of this Lease have the peaceable and quiet enjoyment and possession of the Demised Premises.

**23.6**    Broker Representations. Landlord and Tenant each represent and warrant one to the other that except as may be hereinafter set forth, neither of them has employed any broker in connection with the negotiations of the terms of this Lease or the execution thereof.  Landlord and Tenant hereby agree to indemnify and to hold each other harmless against any loss, expense or liability with respect to any claims for commissions or brokerage fees arising from or out of any breach of the foregoing representation and warranty.  Tenant represents and warrants that they are represented by Tyson Fowler/Cushman Wakefield, Landlord represents and warrants it is exclusively represented by Ben Richardson/Kyle Roberts/NMRK in connection with this Lease. Landlord has entered into a separate commission agreement with the foregoing agent.

**23.7**    Tenant Certificate. Tenant shall at any time and from time to time upon not less than five (5) days' prior written request by Landlord, execute, acknowledge and deliver to Landlord a statement in writing executed by Tenant certifying that this Lease is in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified) and that Tenant is in possession of the Demised Premises, stating the dates to which rent and other charges payable under the Lease have been paid, and stating that Landlord is not in default hereunder (of if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord or its lender or purchaser shall reasonably require.  It is intended that any such statement executed by Tenant may be relied upon by any prospective purchaser or mortgagee of the property or land upon

32

9/30/2021

which it is situated. In the event that Tenant should fail to execute such a statement promptly as requested, Tenant hereby irrevocably constitutes Landlord as its attorney-in-fact to execute such instruments in Tenant's name, place and stead, it being further agreed that Tenant shall be deemed to have acknowledged and agreed to the provisions of said statement.

**23.8**    Choice of Law. The laws of the State of Utah shall govern the interpretation, validity, performance and enforcement of this Lease, notwithstanding any conflict of law principals or provisions of the laws of the State of Utah or any other state. If any provision of this Lease should be held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Lease shall not be affected thereby.

**23.9**    Waiver of Jury Trial. THE PARTIES WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CLAIM WHATSOEVER IN ANY ACTION, PROCEEDING OR HEARING BROUGHT BY EITHER PARTY AGAINST THE OTHER IN ANY MATTER ARISING OUT OF OR IN ANY WAY RELATED TO THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, OR TENANT'S USE OR OCCUPANCY OF THE DEMISED PREMISES, THE BUILDING, OR THE PROPERTY.

**23.10**    Mediation and Arbitration in General. As explained in Section 17.1, the parties agree to participate in mandatory mediation before commencing any lawsuit or arbitration, except (1) in matters involving an eviction, unlawful detainer, abandonment, or similar claim, (2) in matters involving a nonpayment of rent or additional rent owed under this Lease, and (3) in matters where immediate injunctive relief is reasonably required. Such mediation shall occur in Utah County, in accordance with the laws of the State of Utah. The parties will in good faith attempt to choose a mediator they both agree on. If the parties cannot agree on a mediator, Landlord will provide three names of mediators in good faith, and the Tenant will choose one of three mediators proposed. The parties will split evenly the costs of the mediator. The parties will each be responsible for their own attorney's fees and costs associated with the mediation.

**23.11**    Mediation and Arbitration Continued. If settlement is not reached within sixty (60) days of a written demand for mediation, or if a party fails to consent to mediation within ten (10) days of a written demand therefor, any unresolved dispute, issue, or conflict between the parties shall be resolved by binding arbitration. The number of arbitrators shall be three. The place of arbitration shall be in Utah County, Utah. Utah law shall apply. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Each party consents to the exclusive jurisdiction of the state courts located in Utah County, Utah, and any appropriate appellate courts.

**23.12**    Time is of the Essence. Except as otherwise stated in the Lease, time is of the essence as to all terms of this Lease.

**23.13**    Successors. The terms, provisions and covenants contained in this Lease shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors in interest and legal representatives, except as otherwise herein expressly provided.

33

9/30/2021

**23.14** <u>Recording of the Lease</u>. Tenant agrees not to record this Lease or any memorandum thereof, but Landlord may record this Lease or a memorandum thereof, at its sole election, and Tenant agrees to execute such memorandum upon request by Landlord.

**23.15** <u>Assignment</u>. Landlord shall have the right to transfer and assign in whole or part, all its rights and obligations hereunder and/or in the Property, the Building, and the Demised Premises referred to herein; and in such event and upon such transfer Landlord shall be released from any further obligations hereunder, and Tenant agrees to look solely to such successor in interest of Landlord for the performance of all obligations arising under the Lease.

**23.16** <u>Restrictive Covenants</u>. Tenant expressly acknowledges that it shall have no benefits or rights with respect to the enforcement of any restrictive covenants affecting the Property.

**23.17** <u>No Offer</u>. Landlord has delivered a copy of this Lease to Tenant for Tenant's review only, and the delivery hereof does not constitute an offer to Tenant or an option to lease. This Lease shall not be effective until a copy executed by both Landlord and Tenant is delivered to and accepted by Landlord.

**23.18** <u>Hazardous Materials</u>

    **(a)**    Tenant shall not use, generate, manufacture, produce, store, release, discharge or dispose of on, in or under the Demised Premises, the Building, or the Property , or transport to or from the Demised Premises, the Building, or the Property, any Hazardous Materials (as defined below), or allow any other person or entity to do so, without Landlord's prior written consent.

    **(b)**    Tenant shall comply with all local, state or federal laws, ordinances or regulations relating to Hazardous Materials on, in, under or about the Demised Premises, the Building, or the Property.

    **(c)**    Tenant shall promptly notify Landlord should Tenant receive notice of or otherwise become aware of any (i) pending or threatened environmental regulatory action against Tenant, the Demised Premises, the Building, or the Property; (ii) claims made or threatened by any third party relating to any loss or injury resulting from any Hazardous Material; or (iii) release or discharge or threatened release or discharge of any Hazardous Material in, on, under or about the Demised Premises, the Building, or the Property.

    **(d)**    Tenant shall protect, indemnify and hold harmless Landlord, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expense or liability (including attorney's fee and costs) to comply with this section 23.18, including without limitation (i) all foreseeable consequential damages; and (ii) the costs of any required or necessary repair, detoxification, or cleanup of the Premises or the Property and the preparation and

34

implementation of any closure, remedial or other required plans. This indemnity shall survive termination or cancellation of this Lease for any reason.

(e)    Upon 24 hours prior notice, Tenant shall permit Landlord or its agents to inspect the Premises in order to confirm Tenant's compliance with this section 23.18; Tenant shall also provide Landlord copies of all notices it may receive concerning the environmental condition of the Demised Premises (or the Building or the Property) from any governmental agency.

(f)    "Hazardous Materials" shall mean any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances", hazardous wastes", hazardous materials", or "toxic substances", under any applicable federal or state laws or regulations, as now existing or hereafter amended.

**23.19** <u>Representations and Warranties Concerning Terrorism</u>. Tenant represents and warrants that it is not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by the United States Treasury Department as a Specially Designated National and Blocked Person, or for or on behalf of any person, group, entity, or nation designated in Presidential Executive Order 13224 as a person who commits, threatens to commit, or supports terrorism; and that it is not engaged in this Lease directly or indirectly on behalf of, or facilitating this Lease directly or indirectly on behalf of, any such person, group, entity, or nation. Tenant agrees to defend, indemnify, and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

**23.20** <u>Limitation of Representations and Warranties</u>. Landlord makes no representation or warranty, express or implied, other than those (a) expressly set forth in this Lease and attached Exhibits, or (b) required by applicable law.

*[Signature Page Follows]*

35

9/30/2021

THIS LEASE AND THE EXHIBITS THERETO CONTAIN THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO AGREEMENT SHALL BE IN EFFECT TO CHANGE, MODIFY OR TERMINATE THIS LEASE IN WHOLE OR IN PART UNLESS SUCH AGREEMENT IS IN WRITING AND DULY SIGNED BY THE PARTY AGAINST WHOM ENFORCEMENT OF SUCH CHANGE, MODIFICATION OR TERMINATION IS SOUGHT. TENANT SHALL NOT BE ENTITLED TO RELY ON ANY REPRESENTATIONS OR WARRANTIES OF LANDLORD OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS LEASE OR HEREIN.

EXECUTED   by the parties hereto and dated as of this _4_ day of _October_ _____, 2021.

LANDLORD:

WICP MT TECH 4, LLC

Witnesses as to Landlord:

By: _Mark Weldon_
Mark Weldon
Its: President

Witnesses as to Tenant:

TENANT

NewAge, Inc.

_Tyler Jones_

By: _Kevin Manion_
Its: _Chief Financial Officer_

36

9/30/2021

**EXHIBIT A**

**RULES AND REGULATIONS**

Tenant agrees as follows:

**1.** Sidewalks, halls, passages, stairways, and other Common Areas are the property of Landlord and shall not be obstructed by Tenant or used for any purpose other than access to the Demised Premises or other parts of the Building.

**2.** Tenant and Tenant's employees shall not make disturbing noises, keep birds, animals or pets in the Demised Premises, the Building, or the Property, or use the Demised Premises, the Building, or the Property for lodging or sleeping purposes, or commit any act on the Demised Premises, the Building, or the Property which Landlord deems an interference with the rights, comforts and convenience of other tenants. Business machines and mechanical equipment belonging to Tenant which cause noise or vibration that may be transmitted to the structure of the Building or to any tenants in the Building shall be placed and maintained by Tenant, at Tenant's expense, on vibration eliminators or other devices sufficient to eliminate noise or vibration to Landlord's sole satisfaction.

**3.** Tenant shall not overload the floors of the building, and shall obtain approval from Landlord before installing any iron safe or other heavy equipment or machines. No safes, bulky or heavy articles, furniture or freight, shall be carried into the main entranceway of the Building or the Property unless arrangements are first made with Landlord. Landlord shall prescribe the time and manner for the carrying in and removal of such articles, also the right and proper position of safes and other weighty articles before they are admitted to the Building; and Tenant shall be responsible for all injury to person or property caused by the installing, maintaining or removing of such articles.

**4.** Landlord or its officers or agents may place on the windows and bulletin boards of the premises a notice "to rent", thirty (30) days prior to the expiration of this Lease.

**5.** Tenant may, at Tenant's expense, install blinds on the exterior windows of the Demised Premises, provided such blinds are the standard style, size and color designated by Landlord for the Building. Tenant shall not substitute other window coverings for the building standard blinds; however, Tenant may install draperies (with a white backing) in addition to the Building standard blinds.

**6.** Tenant shall provide plastic or hardboard chair mats under all desk or work station caster-type chairs in carpet areas.

**7.** Parking spaces associated with the Building are intended for the exclusive use of passenger vehicles. Except for intermittent deliveries, no vehicles other than passenger vehicles may be parked in a parking space without the express written permission of Landlord.    The    Common

37

DocuSign Envelope ID: 21C2E061-2B0D-43D9-A687-6A124E8B5F56

Areas dedicated to parking and driving are to be used only for parking, ingress, and egress; and Tenant shall not be allowed to use such Common Areas for its own use, and shall not allow its patrons to so use said Common Areas except for parking, ingress, and egress.

8.      Requirements, requests, or demands of Tenant shall be attended to only upon application at the office of Landlord's managing agent, unless otherwise directed by Landlord in writing.  Such agent's employees shall not perform any work or do anything outside of their regular duties, except on issuance of special instructions from the office of the agent's property management division.  If such employees are made available for the assistance of Tenant, Landlord shall be paid for their services by Tenant at reasonable hourly rates.

9.      Tenant shall not mark or drive nails or screws into walls, or paint or in any way deface the Building or any part thereof, the Property or any part thereof, or the Demised Premises or any part thereof, or fixtures therein.  The expense of remedying any breakage, damage or stoppage resulting from a violation of this rule shall be borne by Tenant.

10.      Tenant shall see that all doors are securely locked, water faucets, electric lights and air conditioning thermostats turned off before leaving the Building.  Tenant shall be responsible for any damage to the Demised Premises, the Building, or the Property, and for all damage or injuries sustained by other tenants or occupants of the building arising out of Tenant's failure to observe this rule.

11.      The delivery, receiving or shipping of merchandise, supplies and fixtures to and from the Demised Premises shall be subject to such rules and regulations as in the judgment of Landlord are necessary for the proper operation of the Demised Premises, the Building, or the Property.

12.      If the Demised Premises are equipped with heating facilities separate from those in the remainder of the Building or the Property, Tenant shall keep the Demised Premises at a temperature sufficiently high to prevent freezing of water in pipes and fixtures.

13.      The plumbing facilities shall not be used for any other purpose than that for which they are constructed, and no foreign substance of any kind shall be thrown therein, and the expense of any breakage, stoppage, or damage resulting from a violation of this provision shall be borne by Tenant, who shall, or whose employees, agents or invitees shall have caused it.

14.      No additional locks or bolts of any kind shall be placed on any of the doors or windows of the Demised Premises or the Building by Tenant without prior written permission of the Landlord.  Tenant shall, on the termination of Tenant's tenancy, deliver to Landlord all keys to any space within the Property, the Building, or the Demised Premises, either furnished to or otherwise procured by Tenant, and in the event of the loss of any keys furnished, Tenant shall pay to Landlord the cost of such keys.

9/30/2021

15.     Tenant shall not put up or operate any engine, boiler, machinery, or stove on the Demised Premises, the Building, or the Property, or carry on any mechanical business on the Demised Premises, the Building, or the Property, or use oil, gas or any burning fluid for heating, warming or lighting, or anything except in incandescent or fluorescent electric lights, without the written consent of the Landlord first being obtained and endorsed on this Lease.  No articles deemed extra hazardous on account of fire, and no explosives, shall be brought into the Demised Premises, the Building, or the Property.

16.     Neither sidewalks, light poles, parking lot areas, walkways, glass store fronts, windows or store fronts, shall be used to display, store, or place any merchandise, equipment, devices, signs, painted materials, placards, stickers, emblems, informal mail material, or any advertising medium.  Landlord shall have the right to remove any such material without notice to Tenant.

17.     Tenant shall not store or place for a prolonged period of time, nor allow any of its employees, agents, customers, licensees, or invitees to store or place for a prolonged period of time, anything outside of the Demised Premises without Landlord's prior written consent.

18.     Tenant shall comply with all applicable local, state, and federal laws, ordinances, and regulations, including, without limitation, those imposed by Lindon City, Utah County, the State of Utah, and the United States' government.

19.     Landlord reserves the right to make such other and further reasonable rules and regulations as in its judgment may from time to time be necessary for the safety, care and cleanliness of the building and for the preservation of good order in the building.

9/30/2021

**EXHIBIT B**

**BUILDING PLAN**



DocuSign Envelope ID: 21C2E061-2B0D-43D9-A687-6A124E8B5F56

## EXHIBIT C

## TENANT IMPROVEMENTS

**A. Landlords Obligations.** Landlord shall provide a Tenant Improvement Allowance in the amount equal to $10.00 per rentable square foot of the Demised Premise, which is estimated to be $320,698.00. The Tenant Improvement Allowance shall only be used for the construction of improvements appurtenant to the Demised Premise. If, in Landlord's sole but reasonable discretion, Tenant uses the Tenant Improvement Allowance for any other purpose, or if Landlord pays an amount in excess of the Tenant Improvement Allowance described herein, Tenant shall reimburse Landlord for such use or excess within thirty (30) days of receiving notice thereof.

Landlord makes no representation or warranty, express or implied, regarding the ultimate fitness of the buildout or any feature, aspect, attribute, or other part thereof, or the suitability of the same for any use desired or contemplated by Tenant. Notwithstanding the foregoing, Landlord will provide, upon Tenant's written request, the information in Landlord's possession regarding applicable third-party warranties regarding the same, and Landlord will make commercially reasonable efforts to assist Tenant in applying for such warranties, if Landlord's assistance is necessary to apply for such warranties. Landlord shall not be responsible for any improvement, alteration, or modification to the Demised Premises other than those improvements, alterations, or modifications specifically set forth in this Section A of this Exhibit C. For purposes of determining the amount of Minimum Base Rent owed under the Lease, the Buildout shall be deemed substantially completed it is sufficiently complete such that the Tenant can occupy or use the Buildout for its intended use.

**B. Tenant's Obligations.** Subject to Landlord's prior written consent and approval, and subject to the other terms of the Lease, Tenant shall be responsible for Tenant Improvement construction, any improvement, alteration, or modification to the Demised Premises, other than those set forth above in Section A. Any such improvement, alteration, or modification must comply with the other terms of the Lease and must be approved in advance by Landlord in writing. Tenant warrants that all construction plans shall be provided by Landlord's architect of record, all construction shall be properly permitted and any contractor preforming work on the Tenants demised premise shall be licensed, bonded and insured. Landlord shall approve all construction in writing which shall not be unreasonably, delayed, denied or conditioned.

41

9/30/2021

C. Landlord Payment of Tenant Improvement Allowance: Landlord shall pay the Tenant Improvement Allowance described in Section A on appropriate draw distributions, which shall be made as work is completed in the Building and the Demised Premises. However, before a draw distribution is made, the contractor with which Tenant contracted to perform the work that has been completed (the "**Tenant Improvement Contractor**") shall provide Landlord all appropriate invoicing and lien releases applicable to such work. To clarify any ambiguity on the issue, Landlord shall have no obligation to pay a draw distribution unless and until it receives the invoicing and lien releases described in the preceding sentence.

If the cost of Tenant's improvements to the Building and the Demised Premises exceeds the amount of the Tenant Improvement Allowance, the Tenant shall take full responsibility for any amount owed above the Tenant Improvement Allowance. In such an event, Tenant warrants that it will pay all Tenant Improvement Contractors in a timely manner. Tenant further agrees to indemnify Landlord and hold it harmless against any loss, liability or damage resulting from or related to Tenant's failure to make such payments, as well as any loss, liability or damage otherwise resulting from or related to any improvement sought in excess of the Tenant Improvement Allowance. Tenant shall, if requested by Landlord, furnish a bond or other security satisfactory to Landlord against any such loss, liability or damage.

Tenant Improvement Contractors shall not place any notice on any state construction registry or any lien on the Demised Premises, the Building, or the Property, and Tenant shall not permit or suffer the same to be placed. In the event such a notice or lien is placed, Tenant shall promptly and diligently prosecute the removal of the same at its sole cost and expense.

9/30/2021

DocuSign Envelope ID: 21C2E061-2B0D-43D9-A687-6A124E8B5F56

# EXHIBIT D

## PERSONAL GUARANTEE

### Intentionally Omitted

43

9/30/2021

DocuSign Envelope ID: 21C2E061-2B0D-43D9-A687-6A124E8B5F56

## EXHIBIT E

## MINIMUM BASE RENT

The Minimum Base Rent for any given month during the Lease Term, as calculated from the Commencement Date, is set forth below:

| Month | Sq Ft | Rate | Monthly | Annual |
|---|---|---|---|---|
| Month 1 - 4 | 32,698 | $0.550 | $17,983.90 | $71,935.60 |
| Month 5 - 6 | 32,698 | $0.000 | $0.00 | $0.00 |
| Month 7 - 12 | 32,698 | $0.860 | $28,120.28 | $168,721.68 |
| Month 13 - 24 | 32,698 | $0.886 | $28,963.89 | $347,566.66 |
| Month 25 - 36 | 32,698 | $0.912 | $29,832.81 | $357,993.66 |
| Month 37 - 48 | 32,698 | $0.940 | $30,727.79 | $368,733.47 |
| Month 49 - 60 | 32,698 | $0.968 | $31,649.62 | $379,795.47 |
| Month 61 - 66 | 32,698 | $0.997 | $32,599.11 | $391,189.34 |

The parties anticipate that:

- Months 1 – 4 will be from October 1, 2021 to January 31, 2022;
- Months 5 – 12 will be from February 1, 2022 to September 31, 2022;
- Months 13 – 24 will be from October 1, 2022 to September 31, 2023;
- Months 25 – 36 will be from October 1, 2023 to September 31, 2024;
- Months 37 – 48 will be from October 1, 2024 to September 31, 2025;
- Months 49 – 60 will be from October 1, 2025 to September 31, 2026;
- Months 61 – 66 will be from October 1, 2026 to January 31, 2027;

44

9/30/2021

**EXHIBIT F**

**ACKNOWLEDGMENT OF COMMENCEMENT DATE**

TO:                                         DATE:

     RE:    Lease Agreement dated _____, 2021 between WICP MT TECH 4, LLC, a Utah limited liability company, as landlord, and Ariix, Inc. a Utah corporation, as tenant

The undersigned, as Tenant, hereby confirms the following:

1.     That it has accepted possession and is in full occupancy of the Leased Premises, that the Lease is in full force and effect, that Tenant has received no notice of any default of any of its obligations under the Lease, and that the Lease Commencement Date is _____.

2.     That the improvements and space required to be furnished according to the Lease have been completed and paid for in all respects, and that to the best of its knowledge, Landlord has fulfilled all of its duties under the terms, covenants and obligations of the Lease and is not currently in default thereunder.

3.     That said rental payments commenced or will commence to accrue on _____, and the Lease term expires _____.

The above statements are made with the understanding that you will rely on them in connection with the purchase of the above-referenced property.

            NewAge, Inc.

            Signed:_____

            Print: _____

            Title: _____

            Date: _____

45

9/30/2021

# EXHIBIT G

## BUILDOUT PLANS

46

9/30/2021